**UNITED STATES**

v.

**CONTROL DATA CORPORATION.**

A.R.D. 310; Reappraisement No. R66/15959 and 26 others.

United States Customs Court, Third Division, Appellate Term.

Dec. 22, 1972.

Harlington Wood, Jr., Asst. Atty. Gen. (Bernard J. Babb, New York City, trial atty.), for appellant.

Baker & McKenzie, Washington, D. C. (William D. Outman, II, Washington, D. C., of counsel), for appellee.

APPLICATION FOR REVIEW
OF REAPPRAISEMENT
DECISION 11703

Before RICHARDSON, LANDIS and NEWMAN, Judges.

PER CURIAM:

Appellant has filed an application for review of the decision and judgment of the trial court in Control Data Corporation v. United States, 64 Cust.Ct. 693, R.D. 11703 (1970), which sustained appellee's claimed values respecting certain imported merchandise, and upheld the Government's appraised value respecting certain other merchandise. The Third Division, Appellate Term, unanimously reverses the trial court's judgment insofar as it sustains appellee's claimed values.

Judges LANDIS and NEWMAN are of the view that the court has jurisdiction of all of the consolidated appeals for reappraisement; and on the merits, they reverse in part the judgment of the trial court. Judge RICHARDSON is of the opinion that the court lacks jurisdiction of some of the appeals, and as to those cases he does not reach the merits, but rather would dismiss them. In the remaining cases, Judge RICHARDSON is of the opinion that the court has jurisdiction; he concurs with the holding of Judges LANDIS and NEWMAN reversing in part on the merits.

The separate opinions of Judges RICHARDSON, LANDIS and NEWMAN follow:

OPINION

RICHARDSON, Judge:

The instant application was filed by the Government for a review of the de-

cision and judgment of a single judge sitting in reappraisement in Control Data Corporation v. United States, 64 Cust.Ct. 693, R.D. 11703 (1970), and holding, among other things, the proper dutiable value of inner and outer memory planes assembled in and exported from Hong Kong between November, 1965 and October, 1966 to be constructed value as defined in 19 U.S.C.A., section 1401a(d) (section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) and represented by the claimed values of $48.59 (inner planes) and $48.92 (outer planes). Memory planes are component parts of electronic computers. These articles were entered, according to the entry papers, by the "consignee" Norman G. Jensen, Inc. on behalf of appellee, or by appellee as "consignee", at the claimed values, and were advanced in value upon appraisement under the constructed value basis of appraisement to various amounts shown on the invoices averaging $69.56 (inner planes) and $70.08 (outer planes), respectively.

The difference between the claimed values which were sustained on reappraisement below and the appraised values contended for here by the Government involves the amount of profit under the constructed value formula and the manner or extent to which the element of "profit" under that formula is to be applied to an exportation of "services" from a foreign country as distinguished from an exportation of "merchandise" from a foreign country—the components of the subject memory planes being at all times wholly owned by the appellee, an American corporation, and being merely "consigned" to a foreign-based subsidiary for the purpose of assembly into the memory planes at bar. And the case is here under some ten assignments of error filed by the Government against the disposition of this issue by the reappraising court below.

It is to be noted that the case was tried and decided below on its merits without reference by the parties or the trial court to the entry papers comprising part of the record of the proceedings herein. This treatment of the instant case below poses a jurisdictional question for this court insofar as concerns the cases identified in the appended schedule of reappraisement appeals with the prefix (A). An examination of the entry papers in this (A) group of cases by me in connection with the instant application poses the question of the standing of the appellee to file and prosecute the subject reappraisement appeals. This being the case, our primary obligation in connection with the instant application is to consider and dispose of the jurisdictional question even though it was not raised or considered below. There is no requirement that, in matters pertaining to jurisdiction, a court's pronouncements on the subject must await a signal from the parties. A court's concern as to its jurisdiction over issues tendered it by parties for solution is omnipresent, and the existence of such concern as to its jurisdiction in a case can never be made to depend upon the parties' diligence or lack of it in pressing the point. As our appeals court pointed out in United States v. Klytia Corporation, 121 F.2d 473, 29 CCPA 109, 113, C.A.D. 178 (1941), it is the court's duty to raise jurisdictional questions *sua sponte* and act upon them even if such questions are not referred to by the court below or by counsel for the parties.

The entry papers in this group of cases indicate that the consignee is Norman G. Jensen, Inc., the person making entry on behalf of the appellee, and the person to whom notice of appraisement was given by the district director of customs in this case. The entry papers also show that the consignee did not comply with statutory procedures for filing an owner's declaration by which it could have relieved itself from liability for increased and additional duties and conferred the rights of a "consignee" upon the appellee (see 19 U.S.C.A., section 1485(d)). Since the appellee is not the "consignee" within the meaning of 19 U.S.C.A., section 1501(a) (section 501 (a), Tariff Act of 1930, as amended by

the Customs Simplification Act of 1953) because it did not enter the merchandise or acquire the rights of a consignee, is it the "agent" of the consignee within the meaning of that statute? Section 1501(a) reads:

(a) The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court.

Although the subject appeals for reappraisement were subscribed on behalf of the appellee by an attorney in fact over the signature line reading "(Consignee or Agent)", no inquiry was made or evidence elicited at the trial to establish the appellee's authority as the "agent" of the consignee. Consequently, the record is devoid of evidence of appellee's standing or capacity to prosecute the instant appeals. Wilmington Shipping Company v. United States, 52 CCPA 76, C.A.D. 861 (1965).

In Wilmington Shipping Company v. United States, *supra*, the Court of Customs and Patent Appeals rejected the contention of the appellant-consignee that the foreign seller of the merchandise was the "agent" of the consignee within the meaning of section 1501 for purposes of filing reappraisement appeals under that statute. In reaching this conclusion our appeals court quoted approvingly from the opinion of the Appellate Term, Third Division, as follows (p. 80):

It is also our opinion that United Plywood cannot be regarded as the agent of the consignee in writing the letters in question. As the Appellate Term stated:

* * * There is nothing in the record which suggests anything more than a self-appointed agency in this regard. There is no record evidence of authorization from the appellant to United Plywood Co. to institute reappraisement proceedings as agent, written or otherwise.

.  .  .

And in BASF Colors & Chemicals, Inc. v. United States, 420 F.2d 763, 59 Cust. Ct. 834, A.R.D. 228 (1967), affirmed on other grounds in 420 F.2d 763, 56 CCPA 47, C.A.D. 952 (1969), although involving reappraisement appeals subscribed in essentially the same manner as those at bar, the courts resolved the "agency" question on the evidence. The Appellate Term, Second Division, explicitly called attention to the fact that the trial court had received evidence establishing the alleged "agency". The court noted (p. 836):

At the trial, Robert Chavkin, testified that he was the assistant vice president of Biddle Sawyer Corp. He stated:

Q. Did you authorize BASF Colors & Chemicals, Inc. to file the appeals to reappraisement which are before the Court this afternoon?—A. I did.

MR. BLAUVELT: Your witness.

MR. SPECTOR: No questions.

The court went on to point out (p. 837):

In the decision below, Judge Wilson held that the appeals for reappraisement were sufficient to confer jurisdiction upon the court. He noted that

the testimony that Biddle Sawyer authorized BASF Colors & Chemicals, Inc. to file appeals was uncontroverted.

. . .

And finally, on this phase of the case, the court there concluded (p. 839):

In the instant case, it is clear that Biddle Sawyer is the consignee within the meaning of the Tariff Act of 1930 (sections 483–485; 501. . . .

The foregoing authorities clearly affirm the view that the representations and declarations of an alleged agent do not constitute the requisite proof of the authority necessary to enable a party to prosecute reappraisement appeals as "agent" of the consignee within the meaning of section 1501(a). And since a declaration of the alleged "agent" is all that appears of record in this case, it follows that appellee has failed to prove that it had authority to prosecute the (A) group of appeals as "agent" of the consignee, and thereby confer jurisdiction upon the Customs Court to consider these appeals on the merits. This being the posture of the instant case, the (A) group of appeals should have been dismissed by the trial court at the conclusion of appellee's case below on jurisdictional grounds as a matter of law.

In view of his conclusion I do not reach the merits of the instant application as framed in the assignments of error insofar as they relate to the (A) group of reappraisement appeals.

This brings me to the second group of cases identified in the appended schedule of reappraisement appeals with the prefix (B). With respect to these cases, the record shows that the appraising officer was possessed of no value information, and, consequently, solicited and obtained from appellee certain data and figures pertaining to the merchandise. With the information thus obtained the appraiser calculated a percentage of profit [59.46%] realized by the Hong Kong assembler on the amount remitted to it [$14.66] for assembly of memory planes by dividing the assembler's total costs—for direct labor [$2.63] plus over-head general and administrative expenses, and selling expenses [$6.57]—into its profit [$5.47]. The appraiser then applied this percentage on the total product costs [both appellee's and the assembler's] to find a profit figure with which to arrive at a constructed value appraisement.

The reappraising court rejected this method of calculating constructed value as not comporting with the statutory formula, stating, among other things, "This is a fundamental error in the ascertainment of an amount for profit since the *percentage* was generated *without* regard for cost of materials and then an amount arrived at with full regard for cost of materials." And then, perforce of the separability doctrine, the trial court permitted the utilization of the assembler's profit figure, as contended for by the appellee, as the full measure of the profit element called for under the statutory formula, stating:

. . . In this respect, plaintiff [appellee] is entitled to rely on those figures in the appraisement to which the presumption of correctness still attaches. In this case, it is only the method of computation used by the appraising official which has been rejected. The underlying figures for cost of materials, general expenses and profit are not in dispute with regard to the inner and outer memory planes. These figures were supplied by the plaintiff and utilized by the appraising official as demonstrated by plaintiff's collective exhibit 5 and exhibit 6. They remain presumptively correct and should serve as the elements of constructed value.

On this review appellant [defendant below] contends that the reappraising court misconstrued the separability doctrine insofar as it relates to the element of profit; and that while the instant transactions did not result in a sale in the country of exportation, and there were no sales in the country of exportation by competitors, the appraiser's calculation of the exporter's profit on the basis of the assembler's profit was, nevertheless, a reasonable one in the event there

had been a sale—there apparently being no other basis of appraisement to which the appraising officer could turn.

A reading of the testimony of E. Douglas Larson, director and manager for remote sites of appellee's computer manufacturing division, the correspondence exchanged between appellee and the competitors in the industry with Hong Kong based operations [plaintiff's collective exhibits 3 and 4], and the affidavit of Kenneth D. Wallis, managing director of appellee's Hong Kong based subsidiary, Waltek, Limited [plaintiff's exhibit 7], affirms that not only was the subject merchandise "assembled" abroad on a consignment basis for the appellee, but that the same method of doing business characterized the operations of the competitors having Hong Kong based subsidiaries, who, together with appellee, constituted the entire industry in the country of exportation.

The pertinent provisions of 19 U.S.C.A., section 1401a(d) (section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) read:

#### Constructed value

(d) For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

\* \* \* \* \* \*

(2) an amount for general expenses and profit equal to that usually reflected in *sales of merchandise* of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States.
. . . [Emphasis added.]

Although I am in agreement with the trial court that the ascertainment of a statutory profit in these cases by the appraiser did not comply with the requirements of section 1401a(d) as noted above, I, nevertheless, agree with appellant that the "separability" rule has no application in this case, and, accordingly,

I sustain assignments of error numbered 6, 7, and 8. The element of profit is in dispute between the parties, and is, in point of fact, the only area of contention between them. Consequently, appellee was put to its burden of proof respecting this element.

What the appellee has established with its proofs as noted above is that the statutory element of profit cannot be established, insofar as memory planes are concerned, by reason of the fact that a market for the memory planes at bar, in the condition in which they were imported, was non-existent in the country of exportation at the critical times here involved. Memory planes were not offered for sale or sold in Hong Kong because their production there was under the control of parent corporations in this country for purposes other than for sale and distribution in Hong Kong.

The lack of a market for memory planes in Hong Kong at the times in question is crucial in the case because "profit" is one of two elements in a constructed value appraisement under section 1401a(d) which must be determined in the market place if a value for imported merchandise is to be found under that statute. In this respect section 1401a(d) differs significantly from counterpart provisions of predecessor tariff acts where statutory "minimums" for the profit element enabled appraising officers and reappraising courts to find a cost of production value even where as here goods were consigned by the importers to others in the country of exportation for production purposes there and the resulting end product lacked a market in the country of exportation. (See and compare Stirn v. United States, 12 Ct.Cust.App. 42, T.D. 39981 (1924), and Stirn v. United States, 10 Ct.Cust.App. 17, T.D. 38257 (1920), involving silk in the gray exported to be manufactured into dyed thrown silk or dyed spun silk yarns and returned to the United States, and Austin, Baldwin & Co. v. United States, 7 Ct.Cust.App. 186, T.D. 36505 (1916), involving waxed disks exported abroad to have vibra-

tions of the human voice recorded on them and returned in such condition to the United States.) The effect of the elimination of these statutory "minimums" in section 1401a(d) under the Customs Simplification Act of 1956 was to mandate even as to this residual valuation basis the measurement of value in the terms of the market place, at least in part. And the significance of this modification lies in the fact that it is not possible to ascertain a "profit" in the terms of section 1401a(d), absent a market in the country of exportation, without doing violence to the language of the statute.

However, the proper application of the "profit" requirement of section 1401a(d) does not entail, at least in the first instance, a consideration of the profit derived in the country of exportation from sales of the merchandise undergoing appraisement—in this case memory planes. For the ascertainment of profit and general expenses Congress has adopted a collateral standard. Thus, under section 1401a(d) profit must be determined by a consideration of *sales of merchandise of the same general class or kind* —an obviously broader category of articles than that encompassed in any given importation of merchandise. See and compare New York Credit Men's Adjustment Bureau, Inc., Trustee, etc. v. United States, 68 Cust.Ct. 319, A.R.D. 301, decided May 3, 1972.

And herein lies the weakness I find in appellee's case. For while appellee has properly pointed out to us the error in the appraisement at bar predicated upon the memory plane structure, insofar as the "profit" element is concerned, the record before the reappraising court is, nevertheless, left barren of any evidence of the "profit" derived from sales of merchandise of the *same general class or kind* which would support the "profit" figure [$5.47] contended for by appellee. The absence of such evidence is fatal to appellee's case here. By limiting its proofs below solely to memory planes appellee has compounded the error in the appraisement findings which likewise avoided the collateral standard mandated by statute for the "profit" element determination.

In the absence of proof of value different from that arrived at by the appraiser, the appraisement must, nevertheless, stand as being presumptively correct, appellee having failed to discharge its twofold burden of proof. See 28 U.S.C.A., section 2633. Therefore, on this phase of the case, I find as facts:

1. That the merchandise covered by the reappraisement appeals identified in the appended Schedule with the prefix (B) consists of inner and outer memory planes which were exported from Hong Kong by Waltek, Ltd. during the period between November, 1965, and October, 1966.

2. That said merchandise was appraised upon importation into the United States on the basis of constructed value as defined in 19 U.S.C.A., section 1401a (d) (section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at varying amounts averaging $69.56 (inner planes) and $70.08 (outer planes), respectively.

3. That the only item of the appraisement herein which is in dispute between the parties is the element of "profit".

4. That there is no evidence in the record that the element of profit contended for by appellee, namely, $5.47, is equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise at bar which are made by producers in Hong Kong in the usual wholesale quantities and in the ordinary course of trade for shipment to the United States.

And on these facts, I conclude as matters of law:

1. That appellee has failed to rebut the presumption of correctness attaching to the appraisement of the merchandise covered by the reappraisement appeals identified in the said Schedule with the prefix (B).

2. That constructed value as defined in 19 U.S.C.A., section 1401a(d) (section

1398

402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis for the determination of the value of said merchandise.

3. That such constructed values are represented herein by the appraised values.

For the reasons stated, and upon the findings and conclusions herein made, I would reverse the judgment of the trial court, and as to the reappraisement appeals identified in the said Schedule with the prefix (A) I would dismiss said appeals on the ground that the appellee lacks legal capacity to prosecute said appeals, and as to the reappraisement appeals identified in the said Schedule with the prefix (B) the appraised values of the merchandise covered thereby I would sustain by reason of appellee's failure to rebut the presumption of correctness attaching thereto.

APPENDIX

SCHEDULE

|  | Reap. No. | Coll. No. | Plaintiff | Entry |
|---|---|---|---|---|
| (A) | R66/15959 | 443 | Control Data Corporation | 1936 |
| (A) | R66/15960 | 444 | | 2615 |
| (A) | R66/15961 | 445 | | 3009 |
| (A) | R66/15962 | 446 | | 3159 |
| (A) | R66/25754 | 455 | | 3373 |
| (A) | R66/25755 | 456 | | 3544 |
| (A) | R66/25756 | 457 | | 3948 |
| (A) | R66/25757 | 458 | | 3987 |
| (A) | R66/25758 | 459 | | 4195 |
| (A) | R66/25759 | 460 | | 4322 |
| (A) | R66/25760 | 461 | | 4372 |
| (A) | R66/25761 | 462 | | 26 |
| (A) | R66/25762 | 463 | | 888 |
| (A) | R66/25763 | 464 | | 889 |
| (A) | R66/25764 | 465 | | 932 |
| (A) | R66/25765 | 466 | | 969 |
| (B) | R66/25766 | 467 | | 1212 |
| (B) | R66/25767 | 468 | | 1501 |
| (B) | R66/25769 | 469 | | 1502 |
| (B) | R66/25770 | 470 | | 1636 |
| (B) | R66/25771 | 471 | | 1670 |
| (A) | R66/25772 | 472 | | 3635 |
| (A) | R66/25773 | 473 | | 3820 |
| (B) | R66/25774 | 474 | | 1776 |
| (B) | R66/25775 | 475 | | 1915 |
| (A) | R66/26869 | 487 | | 3250 |
| (A) | R66/26870 | 488 | | 1684 |

*Opinion*

LANDIS, Judge:

■ For the reasons herein briefly stated, I am unable to concur with that portion of Judge Richardson's opinion wherein he would reverse and *sua sponte* dismiss the reappraisement appeals he designates "A" on jurisdictional grounds not raised, argued, or briefed by the parties at any stage of the proceedings. The posture of this application for review does not mandate dismissal on jurisdictional grounds of the so-called "A" appeals for reappraisement. Here both parties accepted the jurisdiction of the court below to decide the case. This court on review should be most reluctant to avoid a decision on the merits by asserting *sua sponte* that it has no jurisdiction under section 501, Tariff Act of 1930, as amended, by a narrow construction of the statute which importers and the government have relied on for more than forty years to adjust and determine their rights. Cf. Robertson v. Downing, 127 U.S. 607, 8 S.Ct. 1328, 32 L.Ed. 269 (1888).

The opinion of Judge Richardson contends that in the appeals for reappraisement prefixed "A" the appellee-importer was not the "consignee" within the meaning of section 501, Tariff Act of 1930, as amended, but we should note that the court of appeals in Hersey of Canada, Ltd. v. United States, 406 F.2d 1394, 56 CCPA 64, 66, C.A.D. 955 (1969), declined to express an opinion on this question stating: "It is unnecessary for us here to determine whether Sazu [ultimate consignee] could properly have filed an appeal for reappraisement directly in its own name. Even if it could have done so, it would still be necessary for Hersey [the manufacturer] to establish that it was the agent of Sazu * * * [which] it * * * failed to do." [In that case the appellant was an alleged agent of the ultimate consignee.]

The case of The A. W. Fenton Co., Inc. v. United States, 53 CCPA 98, 100, 101, C.A.D. 884 (1966), is also significant wherein the court of appeals observed that the question of proper notice to the consignee of hearing of an appeal to reappraisement should be raised by motion to vacate rather than by motion for rehearing or by application for review.

BASF Colors & Chemicals, Inc. v. United States, 420 F.2d 763, 56 CCPA 47, 50, C.A.D. 952 (1969), is also pertinent wherein the defendant-appellee had contended before the single judge and the Appellate Term that the appeal for reappraisement should have been dismissed for lack of jurisdiction on the ground appellant was not authorized as agent to file the appeal. Defendant-appellant did not urge the point before the court of appeals and the latter court stated it was satisfied it had jurisdiction to determine the merits of the appeal.

In the absence of any challenge by appellant (defendant below) to the right of appellee (plaintiff below) to file these appeals for reappraisement directly in its own name, whether as consignee or agent, I am satisfied that we have jurisdiction to determine the merits of the application.

Now proceeding to a discussion of the merits of appellant's application for review, the substantive issue which the parties briefed, argued and presented to this court for decision is whether on the statutory valuation basis conceded to be correct, to wit, constructed value under section 402(d) of the Tariff Act of 1930, as amended, 19 U.S.C.A. § 1401a (d), the trial court properly allowed the amount of profit claimed by appellee (plaintiff below).

■ As to that issue, I concur in the result reached by Judge Richardson in the appeals for reappraisement he designates "B", wherein he has determined that for failure of proof by appellee, the value of the imported merchandise (including the amount of profit found by the appraiser) is the constructed value, as appraised.

Since the result Judge Richardson has reached in the reappraisement appeals he has designated "B" necessarily, in my judgment, similarly determines the merits of the appeals for reappraisement he

has designated "A", I am also of the opinion that the value of the imported merchandise (including the amount of profit found by the appraiser) covered by the reappraisement appeals designated "A", is the constructed value, as appraised.[1]

Accordingly, I find as facts:

1. That the imported merchandise consists of inner and outer memory planes exported from Hong Kong by Waltek, Limited during the period between November, 1965 and October, 1966.

2. That the imported inner and outer memory planes were appraised on the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That the only item of the appraisement in dispute, on constructed value basis, is the statutory element of "profit".

4. That there is no evidence that the amount of profit contended for by appellee (plaintiff below) is an amount equal to that usually reflected in sales of merchandise of the same general class or kind as the imported inner and outer memory planes made by producers in the country of exportation in the usual wholesale quantities, and in the ordinary course of trade, for shipment to the United States as required under section 402(d)(2), as amended.

I conclude as a matter of law:

1. That constructed value, as defined in section 402(d), as amended, is the proper basis for valuing the imported inner and outer memory planes.

2. That the appraised values (including the element of profit) on constructed value basis are presumptively correct, and that appellee (plaintiff below) has failed to overcome the presumption.

3. That the constructed values are the appraised values.

---

1. The appeals for reappraisement Judge Richardson designates "A" and "B" are a group of appeals for reappraisement which were consolidated for trial without objection and without any designation as "A" cases and "B" cases.

·Upon the basis of these findings and conclusions, the judgment below should, in my opinion, be reversed.

## OPINION

NEWMAN, Judge:

Two principal questions are presented for decision: (1) whether appellee had standing to file the appeals for reappraisement pursuant to 19 U.S.C. § 1501(a)[1] and (2) whether the trial court correctly sustained the constructed values claimed by appellee.[2]

## STANDING TO SUE

■ Prior to dealing with the merits of this case, I wish to comment briefly concerning appellee's standing to sue in the "A" group of cases. In those cases, Norman G. Jensen, Inc., a customhouse broker, entered the merchandise for the account of Control Data. Jensen declared in the entry papers that it was the "nominal consignee" and that Control Data was the "actual owner for customs purposes". However, no owner's declaration as provided for in 19 U.S.C. § 1485 (d) and Customs Regulation section 8.18 (d) was filed, nor was any superseding bond filed pursuant to the above cited regulation.

My esteemed colleagues have differed respecting the appellee's standing to sue. Judge Richardson has concluded that the court lacks jurisdiction because appellee Control Data was not a "consignee" under section 1501(a), and the record lacks proof that appellee filed the appeals for reappraisement as an agent

of the consignee. Judge Landis, however, is of the view that absent any challenge by appellant to the right of appellee to file the appeals, the court has jurisdiction. For the following reasons, I concur with Judge Landis.

Even if appellee was not a "consignee" under section 1501(a),[3] that provision also expressly authorizes appeals to be filed in the name of an *agent* of the consignee. The notices of appeal in the "A" group of cases were filed by an attorney-in-fact on behalf of Control Data, and under the signature line there appear the words "(Consignee or *Agent*)". [Emphasis added.] Yet, at no stage of the litigation—during the trial or during the application for review —has the Government challenged appellee's standing to sue, either as a consignee *or as an agent*. Under these circumstances, I am of the opinion that there was no burden cast upon appellee to go forward with proof of its standing to sue when no issue was raised by appellant. Cf. United States v. Barr Shipping Company, Inc., 68 Cust.Ct. 332, A.R.D. 303 (1972).[4]

Plainly, if appellant had raised a question of agency by a motion to dismiss at the trial, then it would have become necessary for appellee to establish its standing to file the appeals for reappraisement. See BASF Colors & Chemicals, Inc. v. United States, 59 Cust.Ct. 834, A.R.D. 228 (1967), aff'd, 420 F.2d 763, 56 CCPA 47, C.A.D. 952 (1969); Hersey of Canada, Ltd. v. United States, 406 F. 2d 1394, 56 CCPA 64, C.A.D. 955 (1969). See also Wilmington Shipping Company, *supra*, 52 CCPA at 80.

---

1. This section provides: " * * * The decision of the appraiser * * * shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed *by the consignee or his agent* with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. * * * " [Italics added.]

2. It should be noted that the trial court affirmed the appraised values of the extended memory core mats, but no application for review from that part of the judgment was filed by appellee.

3. See Wilmington Shipping Company v. United States, 52 CCPA 76, 79, C.A.D. 861 (1965); Top Form Brassiere Mfg. Co., Ltd. v. United States, 342 F.Supp. 1167, 68 Cust.Ct. 288, R.D. 11770 (1972); Isador Dorfman v. United States, 36 Cust.Ct. 540, R.D. 8555 (1956).

4. See concurring opinion by Judge Maletz.

Hence, I have concluded that it would be most unjust at this late stage of the proceedings, and without any question having been raised by appellant, for the court to assume that appellee lacked standing to file the appeals for reappraisement and to dismiss them *sua sponte*.

### THE MERITS

#### 1.

Judge Richardson reached the merits only of the "B" group of cases; Judge Landis reached the merits of both the "A" and "B" groups. Similarly, this discussion applies to the "A" and "B" cases.

Appellee, a manufacturer of computers imported from its wholly-owned subsidiary, Waltek, Ltd. (situated in Hong Kong) certain "memory planes" for use in its computers. The dates of exportation were from November 1965 through October 1966, and the port of entry was Minneapolis, Minnesota. For reasons relating to quality, specifications, and cost, appellee "consigned" the necessary materials to Waltek for assembly into the imported merchandise, and title to the materials remained with appellee.

The district director at the port of entry appraised the merchandise on the basis of constructed value, as defined in 19 U.S.C. § 1401a(d). The appraised values include an amount for constructively segregable American goods.

The learned trial judge held that constructed value was the proper basis for appraisement, but that the method used by the Government to determine the profit element of such value was improper. Additionally, the trial court held that appellee had successfully proven the elements of constructed value, and upheld the values claimed by appellee. The sole issue concerns the proper amount of profit to be included in the constructed value of the memory planes.

It appears that on or about March 22, 1966, the import specialist in the district director's office in Minneapolis requested appellee to submit a breakdown of Waltek's assembly charge ($14.67). In response to such request, appellee furnished the following figures:

| | |
|---|---|
| Direct labor | $ 2.63 |
| Overhead, general and administrative expenses and selling expenses | $ 6.57 |
| Profit | $ 5.47 |
| Total charge per assembly plane | $14.66 [$14.67] |

On April 21, 1966, the district director's office sent a notice (Customs Form 5555) informing appellee that the basis of appraisement would be constructed value computed in the manner indicated on an attached sheet, and that the figures used in such computation were those supplied by appellee. Additionally, the district director's office gave appellee's representatives a worksheet illustrating the method of computation utilizing the figures appellee submitted.[5] The figures in the worksheet apply to only some of the entries involved in this case, but the method of computation applies to all the entries. The worksheet shows the mathematical computations involved in determining the constructed value of the memory planes. Costs of direct labor ($2.63) and overhead ($6.57) were added, and the total figure ($9.20) was divided into the profit ($5.47), yielding 59.46 per cent profit. The cost of labor and overhead ($9.20) was added to the landed cost of the American materials ($34.04), resulting in a total cost of $43.24. That latter figure was then multiplied by Waltek's percentage of profit (59.46 per cent) to determine the dollar figure for profit per memory plane. The profit per memory plane was computed to be $25.71, which figure was then added to $43.24 (total costs for labor, overhead and materials), resulting in a "constructed value" of $68.95.

The record also includes an affidavit of the managing director of Waltek, which shows Waltek's profit as $6.05. Constructed values found by the trial court, and claimed by appellee, include the profit figure of $6.05, while appel-

---

5. The worksheet is set forth at length in the decision of the trial judge. 64 Cust.Ct. at 700.

lant relies upon the profit figure included in the appraisement computed in the manner shown above.

### 2.

Appellant contends that the trial court erred in holding that a presumption of correctness attached to Waltek's profit because only the profit figure which the district director included in the appraised value (viz., $25.71) may be considered presumptively correct. Appellee insists that the trial court correctly held that a presumption of correctness attached to Waltek's profit figure, inasmuch as such figure was utilized by the Government in its computation of constructed value.

In my view, there is a presumption of correctness attaching both to Waltek's profit figure utilized in the Government's computation ($5.47), and the profit figure the district director derived from the latter figure by a computation ($25.71) which he included in the constructed value. Waltek's profit has the status of a "subsidiary finding" by the district director *solely as to the amount of Waltek's profit*, and thus is presumptively correct *only to that extent*. On the other hand, the amount of profit which the district director included in the constructed value ($25.71) has the status of a presumptively correct "subsidiary finding" that such amount was "equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement", as required by 19 U.S.C. § 1401a(d)(2).

### 3.

Since there is no presumption that Waltek's profit was "equal to that usually reflected in sales of merchandise of the same general class or kind" (because it was not the profit included in the appraised value), appellee had the burden of establishing by proof the profit usually reflected in sales. In that connection, the record establishes that appellee sent letters to four parent companies, viz., Ampex Corporation, Fabri-Tek, Electronic Memories and Lockheed Aircraft International, inquiring whether each such parent company through an "affiliated operation" in Hong Kong "assembled, manufactured or otherwise fabricated" memory planes; and if so, whether the parent companies would disclose "the amount or rate of profit attributable to the assembly of these products in Hong Kong". The replies to appellee's letters by the four parent companies affirmed that they had subsidiary or affiliated operations in Hong Kong which assembled memory planes,[6] but each company declined to disclose the profits made by its Hong Kong subsidiary. No inquiries similar to those sent the parent companies in the United States were sent directly to the subsidiary firms located in Hong Kong.

Where diligent effort has been made to ascertain the profits of other manufacturers in the country of exportation without success, the courts have accepted the actual profit of the exporter of the involved merchandise. United States v. Jovita Perez, 36 CCPA 114, C.A.D. 407 (1949); Rex Cutlery Corp. v. United States, 55 Cust.Ct. 778, A.R.D. 199 (1965); United States v. Berben Corporation, 49 Cust.Ct. 497, A.R.D. 147 (1962). Here, the trial court held that appellee's "inquiries do not constitute the diligence required by this court since such inquiries should have been directed to the subsidiaries." Appellee argues that the trial court erred in so holding because "the record shows the requested information was in the possession of and available to each company contacted".

Even granting that appellee exercised "diligent effort", this court could not accept Waltek's actual profit, as "equal to that usually reflected in sales" under section 1401a(d)(2), because neither Waltek nor the other Hong Kong companies involved in similar assembly

---

6. The record indicates that Waltek and these four subsidiaries comprised the entire industry in Hong Kong engaged in assembling memory planes.

operations were engaged in sales of memory planes. Section 1401a(d) (2) is explicit that the profit included in constructed value shall be reflected in "sales of merchandise of the same general class or kind as the merchandise undergoing appraisement" in the "usual wholesales quantities" and in "the ordinary course of trade". Significantly, Waltek's "sales" and those of the other Hong Kong subsidiaries were of *assembly services*, not *merchandise*. In no decision which has been called to the court's attention has the "diligent effort" rule been applied where the exporter was making its profit merely on a service. Consequently, I have concluded that the "diligent effort" rule is not applicable in this case.

### 4.

The trial court determined that the method used by the Government to determine the profit component of constructed value circumvented item 807.00, TSUS.[7] Although item 807.00 is not directly involved in these proceedings, the question of whether the appraisements have circumvented that provision may properly be considered.

The fact that a portion of the profit on a sale of merchandise may be attributable to the materials in the product sold does not, in any way, defeat the provisions of item 807.00. If in liquidating the entries under item 807.00, the district director deducts "the cost or value of such products of the United States" from the "full value of the imported article", the importer will receive all the exemption from duty to which it is entitled. Cf. Border Brokerage Company

v. United States, 44 Cust.Ct. 688, R.D. 9687 (1960).

In the instant case, a deduction of the cost of materials from the values found by the trial court would *leave merely the importer's cost of assembly* upon which to assess duty under item 807.00. However, unlike articles exported for repairs, alterations, or processing (upon which a duty is assessed on the value of the repairs, alterations or processing),[8] articles assembled abroad of components of the United States are to be assessed duty upon the *full value of the imported article* less the cost or value of United States components. In my opinion, the values determined by the trial court are not the "full values" called for by item 807.00 from which the cost of materials must be subtracted.

### 5.

In justification for its method of determining the profit component of constructed value, appellant states in its brief that "there were no sales from which to select a profit, and there was no other basis of appraisement [than constructed value] to which the District Director could turn". Further, appellant argues that the method employed "was a reasonable one to arrive at what the profit would have been had there been a sale".

Under 19 U.S.C. § 1500, the appraising officer has the duty to appraise merchandise by ascertaining or *estimating* its value "by all reasonable ways and means in his power". I am of the opinion that since there were no sales of memory planes, the appraiser's method of estimating the profit component of constructed value was in compliance with sections 1500 and 1401a(d)(2).

7. Item 807.00 provides: "Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting. . . . A duty upon the full value of the imported article, less the cost or value of such products of the United States * * * *".

8. See items 806.20 and 806.30, TSUS.

### 6.

I am cognizant that an absence of sales causes administrative difficulties in determining constructed value under our present statute, and from a practical standpoint places a virtually insuperable burden of proof on an importer contesting an appraisement in this court. In Bell Importing Co. v. United States, 57 Cust.Ct. 552, R.D. 11196 (1966), Judge Nichols, commenting upon the Hong Kong tailor-made clothing trade, observed (57 Cust.Ct. at 555–56):

> * * * That trade offers difficulties both as to administrative and judicial statutory appraisal, which were devised for quite different conditions. * * *
>
> * * * * * *
>
> Demonstrating a customs appraisal wrong is never easy, and it varies from moderately difficult to practically impossible, depending on the type of merchandise and the practices usual in the trade involved. * * *

I believe that the foregoing observations are equally pertinent to the present case. The absence of sales of memory planes in Hong Kong for exportation to the United States obviously placed a "practically impossible" burden of proof on appellee. Although the result reached in this case undoubtedly appears harsh and somewhat unjust, the remedy, if any, must lie with Congress.

In sum, I am fully aware of and sympathize with appellee's predicament. But confronted by the clear provisions of the statute, appellee's failure to prove the profit "usually reflected in sales of merchandise of the same general class or kind" is fatal to appellee's case. The district director was correct in rejecting Waltek's profit figure ($5.47) as it was not the profit required by the statute; and the court, of course, is bound by the statute.

Accordingly, I am constrained to join my associates in reversing that part of the decision predicated upon the profit Waltek made on its assembly services.

I find as facts:

1. The imported merchandise consists of certain inner and outer memory planes which were exported from Hong Kong by Waltek, Ltd., during the period of November 1965 through October 1966.

2. The merchandise does not appear on the Final List, T.D. 54521.

3. The merchandise was appraised on the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. Appellee agrees that constructed value is the proper basis for appraisement; and the sole issue concerns the statutory element of "profit".

5. At or about the time of exportation, inner and outer memory planes were not sold or offered for sale in Hong Kong for exportation to the United States, but the Hong Kong firms producing memory planes were engaged in merely assembly operations for firms in the United States.

6. The exporter's (Waltek's) profit was not made on sales of memory planes, but rather was made on assembly operations, which utilized component materials furnished entirely by appellee on a "consignment" basis.

7. There is evidence that Waltek's profit (contended by appellee to represent the correct amount of profit) is equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement.

8. Utilizing certain figures supplied by appellee, the district director determined Waltek's percentage of profit on its assembly operation, and then applied that percentage to the landed cost of American materials, as well as to the costs of direct labor and overhead. The underlying figures utilized by the Government to compute the statutory element of profit under section 402(d)(2), as amended, are not in dispute.

I conclude as matters of law:

1. Constructed value, as defined in section 402(d) of the Tariff Act of 1930,

as amended by the Customs Simplification Act of 1956, is the proper basis for appraisement.

2. There is no presumption that Waltek's profit on its assembly operation was equal to the profit which was usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement; and the trial court erred in so holding.

3. The constructed values, including the element of profit, found by the district director are presumptively correct, and appellee (plaintiff below) has failed to overcome that presumption.

4. The constructed values of the merchandise are the appraised values.

5. The judgment of the trial court should be reversed respecting the inner and outer memory planes.