No. 56756.—T. W. Holt & Company *v.* United States, petition 6767–R (Tampa).

Rao, Judge: By notice of motion, dated October 6, 1951, returnable November 22, 1951, counsel for petitioner above-named moved this court for an "Order to Punish for Contempt of this Court the following employes of the Treasury Department of the United States to-wit: W. E. Higman, Chief of Division of Classification, Entry and Value, of the Bureau of Customs, Treasury Department, Washington, D. C., and his Assistant and co-employee V. G. Corey, of the same office and address, in their capacity as United States Treasury Department employees," for declining to comply with the judgment of this court in the above-entitled action (Abstract 54422) and for directing the office of the collector of customs at Tampa, Fla., not to comply with said judgment.

Attached to the notice of motion was a memorandum signed by counsel for the petitioner but not verified, containing a recital of the facts and the law upon which the application for the contempt order was predicated. In substance, it was asserted that petitioner sued in this court for a remission of additional duties assessed against certain imported merchandise entered at the port of Tampa, Fla.; that after a trial in said port of Tampa, a judgment was entered granting said petition for remission; and that the collector of customs at Tampa, Fla., is ready and willing to issue a refund to petitioner, which act is stated to be in compliance with said judgment, but is restrained from doing so by direction of said Higman and Corey of the Bureau of Customs. In explanation of the attitude of the said Higman and Corey, counsel states that it is their view that the refunds could not be paid to petitioner because entry of the merchandise covered by the petition had been made in the name of the customhouse broker, and, no owner's declaration having been filed, any refunds found due were payable to the broker. He states further that he was first advised by the said Higman and Corey that payment was being withheld because the said broker's financial dealings with the Government were under investigation; but that thereafter, he was informed that the matter of the claim of petitioner for payment of the refunds was referred to the General Accounting Office.

The said Higman and Corey filed special appearances in this proceeding and sought a dismissal of the motion on the grounds that the moving papers were not supported by affidavit or other verified statement; that they were not personally served on said W. E. Higman and V. G. Corey; and that they did not indicate whether the charge of contempt was civil or criminal. In the alternative, it was requested that should the application for dismissal of the motion be denied, the said W. E. Higman and V. G. Corey be granted 30 days after the issuance of an order on their cross-motion to appear generally and oppose petitioner's motion upon the merits.

This court by order dated February 4, 1952 (Abstract 56373), denied said motion to dismiss and granted counsel for respondent and/or the alleged contemnors 30 days in which to appear generally and to oppose this motion upon the merits.

On or about February 15, 1952, Higman and Corey appeared generally herein, and moved this court for an order striking from the memorandum in support of the original motion, certain numbered paragraphs as irrelevant and immaterial or as mere conclusions or conjectures on the part of the movant, and also for an order requiring that the allegations in paragraph numbered 6 of said memorandum be made more definite and certain.

After hearing Richard E. FitzGibbon, Esq., in support of said motion to strike out the aforementioned allegations and to make more definite and certain, and John F. Kavanagh, Esq., in opposition thereto, this court issued its order dated February 20, 1952, directing "that the allegations contained in paragraph numbered 6 of said memorandum in support of the motion to punish for contempt be made more definite and certain."

On March 18, 1952, counsel for petitioner filed with this court a document entitled "Petitioner's Compliance with Court Order of February 20, 1952, requiring Petitioner to Furnish Respondent's attorney with certain facts relative to Restraint exercised by W. E. Higman and V. G. Corey on the Collector of Customs at Tampa, Florida." This memorandum consists of 60 numbered paragraphs and 15 exhibits. It is replete with extraneous matter, self-serving statements, and inaccurate interpretations of the statutes and legal decisions bearing upon the questions raised by these proceedings. However, it may be said that exhibits number 6 and 8, consisting, respectively, of a letter dated May 15, 1951, from B. A. Williams, collector of customs at Tampa, Fla., to the Honorable Spessard L. Holland, United States Senator from Florida, and a letter dated July 19, 1951, from the said B. A. Williams to T. W. Holt & Company, tend to establish that the collector of customs at Tampa, Fla., was of opinion that the refunds should be certified for payment to petitioner, but that he was directed by the Bureau of Customs to submit the question as to who is the proper payee of such refunds to the General Accounting Office for decision. Neither of these communications is specifically related to the persons whom counsel for petitioner cites for actions allegedly contemptuous. It is, however, the contention of counsel for petitioner that exhibits 1, 3, 7, and 13 establish that V. G. Corey and W. E. Higman handled this matter for the Bureau of Customs, and, indeed, exhibits 1, 3, and 15 consist of communications from Higman and/or Corey which relate to the claim of petitioner for the involved refund.

The reply of Messrs. Higman and Corey, filed by their attorney Charles J. Wagner, Acting Assistant Attorney General for the United States, by Richard E. FitzGibbon, special attorney, contains specific denials of all allegations in the original moving papers which assert that they are in contempt of this court. In a memorandum of law attached to said reply, the alleged contemnors argue that a judgment of the court granting a petition in a remission case is fully complied with when a liquidation or reliquidation is made indicating that the additional duties are not due. It is also asserted that payment of the refunds by the collector to T. W. Holt & Company would be contrary to law, and, therefore, the transmission of its claim to the General Accounting Office for settlement could not constitute restraint nor be construed as an act in disregard or disobedience of any judgment and/or order of this court.

A rejoinder to respondent's reply, filed by counsel for petitioner, need not here be discussed.

At this point, we deem it appropriate to set forth the facts and circumstances giving rise to these proceedings. It appears that T. W. Holt & Company was the ultimate consignee of two importations of straw brooms. Each of these importations was consigned to Kenneth Kittleson, as customhouse broker, who entered the merchandise at its invoiced value. At the time of entry, Kittleson declared that he was not the actual owner of the merchandise involved in each importation, the true owner being stated as T. W. Holt & Company; but no owner's declaration such as is provided for in section 485 (d) of the Tariff Act of 1930 was filed. The appraiser advanced the entered values and assessed increased and additional duties against the importations. These were paid by T. W. Holt & Company, the actual owner and ultimate consignee of the merchandise. The appraised values having been sustained in appeals for reappraisement filed by T. W. Holt

& Company, the said company petitioned this court for the remission of the additional duties, and, after a trial of the pertinent issues, a judgment was entered decreeing that the petition of T. W. Holt & Company be granted.

The foundation upon which the instant motion is laid is that the said Higman and Corey have themselves declined to comply with a judgment of this court and have directed the collector of customs at Tampa, Fla., and his office not to comply with said judgment. If, in fact, the judgment of this court directed the collector of customs at Tampa, Fla., or the United States, respondent, to pay to petitioner the moneys found to be due as refunds, and any employee of the United States interfered with the enforcement of that judgment, he would be obstructing the process of this court, and under section 401 of title 18 of the United States Code, this court would have the power to punish such contempt. *Bullocks, Inc.* v. *United States*, 68 Treas. Dec. 99, T. D. 47809. We do not, however, so construe the force and effect of the judgment heretofore rendered by us.

Section 489 of the Tariff Act of 1930 authorizes the remission of additional duties assessed for undervaluation—

* * * upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

As to who may file the petition and thus institute the action in which the additional duties are sought to be remitted, the statute is silent. But that some person or persons in privity with the transaction has been accorded that right seems not to be in doubt. The ambiguity of the enabling law is resolved with respect to a proper party petitioner by the rules of the United States Customs Court, for by the terms of rule 29, as amended December 14, 1945, and in effect when the instant petition was filed, petitions for remission must be signed and filed by the importer, consignee, or agent.

It is not to be supposed, however, that the alternative authorization to institute a remission suit was intended to place the United States in a position whereby, in the event of a judgment favorable to a petitioner, it might be compelled to make refunds to more than one party. The Government's liability to remit is coextensive with and subject solely to the right of that person only who is legally entitled to the refund of the additional duties paid. And irrespective of who may have paid the duties in the first instance, the person who is legally liable for the payment of duties is the person legally entitled to recover them.

Section 483 of the Tariff Act of 1930 provides that—

(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof. * * *

For customs purposes, the consignee thereby becomes the owner of all merchandise imported by him, whether or not for the account of another, and he cannot divest himself of that ownership or liability for the payment of any additional or increased duties subsequently found to be due upon said merchandise, unless, and in compliance with the provisions of section 485 (d) of said act—

* * * (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe.

By the further terms of said section 485 (d), such owner then becomes possessed of all the rights of a consignee.

No owner's declaration such as is provided for in said section 485 (d) is annexed to the official papers in this case, and a fair construction of all the moving papers in this proceeding permits of the conclusion that an owner's declaration has not in fact been filed. Accordingly, the owner of the instant merchandise for customs purposes, and the person liable for the additional duties which were here collected, was the consignee, petitioner's customs broker.

Nevertheless, T. W. Holt & Company, as the actual importer of the merchandise at bar, had a right accorded by the provisions of rule 29, *supra*, to petition this court for the remission of the additional duties assessed by the collector. Moreover, it is essential that such a right be extant for the protection of an importer against the possible defection of a disinterested, negligent, or bankrupt nominal consignee.

Petitioner's right was exercised by the commencement of the instant suit and fulfilled by the issuance of a judgment granting the petition for remission. That judgment, however, determined only that petitioner had affirmatively established to the satisfaction of the court that the undervaluation was without any intent to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. *Les Parfums de Molyneux* v. *United States*, 26 C. C. P. A. (Customs) 323, C. A. D. 36. It is in no sense of the word either a money judgment or a specific direction to the United States or to the collector of customs to pay the refund determined to be due to the particular party plaintiff. "In strictness the court does not adjudge refund or remission but adjudges facts upon which the collectors of customs base their subsequent acts." *Les Parfums de Molyneux* v. *United States, supra*.

In such subsequent acts, collectors of customs are required to follow the procedure outlined in section 24.36 (c) of the Customs Regulations of 1943, wherein provision is made for payment of refunds of excessive duties or taxes to the importer of record, unless an owner's declaration has been duly filed in accordance with the provisions of section 485 (d), *supra*. The predecessor of this regulation, to wit, article 1201 of the Customs Regulations of 1937, couched in substantially similar language, was held in the case of *E. H. Corrigan* v. *United States*, 35 C. C. P. A. (Customs) 10, C. A. D. 364, to be a reasonable and proper regulation as applied to the facts of the case before the court.

The *Corrigan* case, *supra*, is, in many respects, controlling of the issue raised by the pending motion, although presenting in fact the converse of the present situation. It there appeared that the customhouse broker, as nominal consignee, who had been required to pay additional duties for undervaluation to protect his bond, filed a petition for the remission of such duties, and his petition was granted. Pursuant to the judgment in the remission case, the collector reliquidated the involved entries, and certified the refunds found to be due for payment to the ultimate consignee, a declaration of ownership having been filed as provided for in section 485 (d) of the Tariff Act of 1930. The customhouse broker thereupon protested the collector's refusal to pay the refunds to him. After first answering affirmatively the question of whether such a refusal to pay was a protestable decision, the court held that the case was governed by the provisions of section 485 (d) *supra*, stating:

The burden of appellant's argument is that the regulation, statute, and judgment of the court in the remission case contemplate the payment of the additional duties to the person who paid them. This is fallacious reasoning because an outsider may have paid them and he might have been wholly unrelated to the transaction in any way except that he furnished the money.

Ordinarily, the party who pays additional duties and gets a judgment for remission receives a return of the money; but where the party paying the money, acting for his customer or client, files notice of ownership as provided for in the statute, he divests himself of any right to claim that he is entitled to the repayment of additional duties. The situation would be quite different were it not for the filing of the declaration of ownership, which in this case we think is a controlling consideration.

Thus, although the judgment of the United States Customs Court granted the petition of the broker (the nominal consignee) for the remission of the additional duties actually paid by him, it was the considered opinion of our appellate court that the collector properly paid the refunds to another, to wit, the person who was to be regarded as the owner for all customs purposes.

It may, of course, be urged that the *Corrigan* case, *supra*, hinged largely upon the fact that the customs broker was considered to be acting as agent of the owner in paying the additional duties and in seeking their remission; and that payment to the owner satisfied the judgment in favor of petitioner. Nevertheless, the remission proceedings were brought in Corrigan's name individually, and not as agent, he having paid the duties, and had the mandate of this court in such proceedings been in fact a direction to the collector to pay the refund to the petitioner in the case, our appellate court could not have disregarded that judgment except in a direct appeal therefrom.

Moreover, the case of *Maginnis* v. *United States*, 61 Treas. Dec. 348, T. D. 45471, decided by the Court of Claims in 1932, would seem to compel a rejection of any other theory of the *Corrigan* case, *supra*, except that predicated upon the controlling effect of sections 483 and 485 (d), *supra*.

*Maginnis* v. *United States*, *supra*, arose out of the following circumstances. Plaintiff, Maginnis, was the ultimate consignee of certain imported merchandise which was entered by and in the name of one A. C. Merkle, a customhouse broker. Duties assessed thereon under paragraph 1430 of the Tariff Act of 1922 were paid to the collector by and in the name of A. C. Merkle with moneys furnished by Maginnis. The latter filed a protest claiming that certain of the merchandise was dutiable at a lower rate than that assessed by the collector and the claim of the protest was sustained. Thereafter, a judgment was obtained by the United States against Merkle, and the Treasury Department directed the collector to apply the refunds arising from reliquidation of the entries covered by the protest to satisfy the judgment against Merkle. It further appears that in certain of the protested entries, either no owner's declarations were filed, or, if filed, not within the 90-day period provided for in section 485 (d) of the Tariff Act of 1922. As to these entries, the Court of Claims held, on a demurrer to the petition of Maginnis for the recovery of the excess duties, that under the provisions of section 483 of the Tariff Act of 1922, Merkle, as the consignee, became and was the owner of the goods for customs purposes, and, regardless of the fact that the protest was filed by the true owner, the refunds were payable to the importer of record. Hence, they were properly set off against the judgment held by the United States against Merkle. The court then stated:

\* \* \* We think sections 483 and 485 (d) definitely fixed the ownership of the merchandise in these two classes in Merkle for all customs purposes—the refunding of excess duties as well as the payment of any additional duties that might have been assessed.

In the light of the foregoing cases, we take it to be settled law, at least with respect to remission proceedings, that a judgment granting a petition for remission is neither a ruling with respect to the ownership of merchandise nor a direction to the collector to remit any refunds found to be due to the particular petitioning party. That being so, it follows that Customs Bureau officials who instruct collectors of customs to comply with sections 483 and 485 (d), and section 24.36 (c), *supra*, in certifying payment of refunds, which action is or may be calculated

to cause payment thereof to be made to one other than the petitioner, are neither flouting the lawful process of this court, nor contemptuous of its orders. The motion to punish for contempt is, therefore, denied.

### CONCURRENCE

LAWRENCE, Judge: In signifying my concurrence herein, I desire to point out that while I entertain no doubt of the power in this court to punish for contempt in appropriate proceedings, nevertheless, for the reasons set forth in the well-reasoned opinion of my associate, Judge Rao, I am satisfied that our jurisdiction to do so has not been properly invoked in this case, and that the proceedings herein might well have been dismissed.