## MOHAWK RECREATION PRODUCTS, INC.

v.

## UNITED STATES.

C.R.D. 76–13, Court No. 74–6–01524.

United States Customs Court.

Dec. 22, 1976.

Sharretts, Paley, Carter & Blauvelt, New York City (Patrick D. Gill, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D.C. (David R. Ostheimer, Trial Atty., New York City), for defendant.

## OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

NEWMAN, Judge:

Pursuant to rules 4.7(b)(1) and 4.12, defendant has moved to dismiss this civil action on the ground that plaintiff had no standing to file protest No. 0712–3–000550

under 19 U.S.C. § 1514 (1970), and therefore the court lacks jurisdiction under 28 U.S.C. § 1582 (1970). In opposition to defendant's motion, plaintiff has submitted a memorandum of law and two supporting affidavits.

I have concluded that plaintiff had the statutory right to file a protest. Accordingly, this court has jurisdiction and defendant's motion to dismiss is denied.

The pertinent statutory provisions read: 19 U.S.C. § 1514(b)(1) (1970):

(b) * * *.

(1) * * * protests may be filed by the importer, consignee, or any authorized agent of the person paying any charge or exaction * * *.

28 U.S.C. § 1582(c) (1970):

(c) The Customs Court shall not have jurisdiction of an action unless (1) * * a protest has been filed, as prescribed by section 514 [19 U.S.C. § 1514] of the Tariff Act of 1930, as amended, * * *.

## 1.

In 1972 plaintiff, then doing business as Hilts-Willard Glove Corporation for purposes of certain transactions, imported gloves through the port of Champlain-Rouses Point, New York. Entry No. 123020 of October 20, 1972 was made for plaintiff's account by A. N. Deringer, Inc., a licensed customs broker. The commercial and special customs invoices show that Hilts-Willard Glove Corporation was the actual purchaser and owner of the imported merchandise. However, no owner's declaration or superseding bond was filed by Deringer in accordance with 19 U.S.C. § 1485(d) (1970) and 19 CFR § 8.18(d) (1970). In short, Deringer was the "nominal consignee" and importer of record, whereas Hilts-Willard Glove Corporation was the "ultimate consignee" and actual importer. Protest No. 0712-3-000550 dated December 17, 1973 and covering consumption entry No. 123020 was filed in plaintiff's name by its counsel, Sharretts, Paley.

R. L. Bronson, an attorney-in-fact for A. N. Deringer, Inc., submitted a supporting affidavit executed on October 13, 1976, averring: on October 20, 1973 affiant made entry No. 123020 for plaintiff, then doing business as Hilts-Willard Glove Corporation (its name prior to a merger in early 1972); in entry No. 123020, Deringer was the importer of record and nominal consignee; the importation of gloves was ultimately consigned to plaintiff; there was no owner's declaration or superseding bond filed in connection with the entry; Deringer paid the duties, and in turn, was reimbursed for the payment by plaintiff; further, that "[w]e acknowledge that Mohawk Recreation Products, Inc. is the real party-in-interest and ultimate consignee in a commercial sense in all instances where we have acted as Customs brokers for Mohawk Recreation Products, Inc. or its predecessor Hilts-Willard Corp., irrespective of whether an owner's declaration or superseding bond was filed"; plaintiff acted as agent for Deringer in filing the protest, and Deringer has ratified plaintiff's action; "[a]t all times, A. N. Deringer, Inc. and Mohawk Recreation Products, Inc. have been in agreement as to the filing of this protest by Mohawk Recreation Products, Inc. through its attorneys, Sharretts, Paley, Carter and Blauvelt, P.C."; and that upon refund of any duties resulting from a successful prosecution of this action, Deringer would forward the refund to plaintiff.

Additionally, Thomas E. Haley, plaintiff's treasurer, submitted a supporting affidavit executed on October 5, 1976, stating that on January 31, 1972 Hilts-Willard Glove Corporation was merged with Mohawk Products, Inc. and became known as Mohawk Recreation Products, Inc.; after the merger plaintiff continued to do business as Hilts-Willard Glove Corporation in order to wind up transactions commenced prior to the merger; at the time of making entry No. 123020 plaintiff was still doing business under the name of Hilts-Willard Glove Corporation for purposes of that transaction; and that by virtue of the merger, plaintiff acquired all of the rights, liabilities and interests of Hilts-Willard Glove Corp.

## 2.

Defendant urges that this action be dismissed for lack of jurisdiction on the

ground that Deringer, who made the entry, was the proper party to file the protest. In the event this motion to dismiss should be denied, defendant "requests that its right to depose the affiants, Mr. Bronson and Mr. Haley, as to the matters contained in their affidavits, be preserved".

Plaintiff responds that it is a real party-in-interest inasmuch as it is the only party which stands to benefit from a recovery of excessive customs duties. Further, plaintiff contends that it filed the protest as agent of the importer of record, and that such filing has been ratified.

### 3.

The sole question for determination is whether plaintiff had the right to file a protest, either on its own behalf or as agent of the importer of record.

The courts have "consistently permitted" the actual owner and ultimate consignee of the imported goods to file protests on its own behalf. In this connection, the following pertinent observations by Judge Miller of our appellate court, concurring in *United States v. Wedemann & Godknecht, Inc., a/c Atwater Throwing Co.,* 515 F.2d 1145, 62 CCPA 86, 93–94, C.A.D. 1151 (1975), are apposite:

> The courts have consistently permitted the owner-importer of the merchandise or his agent to protest the decision of the collector, even though such owner-importer or agent (or both) was not so identified in the entry papers, upon proof of identity at the trial. See *United States v. Hannevig,* 10 Ct.Cust.App. 124, T.D. 38384 (1920); *Adolco Trading Co. v. United States,* 71 Cust.Ct. 145, C.D. 4487 (1973); *Great Lakes Foundry Sand Co. v. United States,* 15 Cust.Ct. 256, Abs. 50442 (1945); *Bernstein v. United States,* 59 Treas.Dec. 870, T.D. 44800 (Cust.Ct.1931); *Davies, Turner & Co. v. United States,* 58 Treas.Dec. 1216, Abs. 14407 (Cust.Ct. 1930); *Gray v. Lawrence,* 10 F.Cas. 1031 (No. 5,722) (C.C.S.D.N.Y.1853). The import of these decisions is that, for purposes of section 514, a protest may be filed by one who proves that he is the

real party in interest or his agent. Thus, in *Bernstein,* supra, the concurring opinion quoted the following portion of Chief Justice Taney's opinion in *Mason v. Kane,* 16 F.Cas. 1044 (No. 9,241) (C.C.D.Md. 1851):

> We see no inconvenience that can arise to the collector, or the public, by permitting the owner to maintain the suit in his own name, instead of suing in the name of his agent or consignee; the payment by the consignee, is the payment by the principal; and the protest of the consignee, the protest of the principal, if he thinks proper to adopt it. We think the practice in some of the circuits has sanctioned suits by the foreign owner, in cases of this description; and as this practice is consistent with a fair construction of the act of 1845, and no injustice or inconvenience can arise from it, the court are of opinion, that this objection must be overruled.

In *T. W. Holt & Company v. United States,* 28 Cust.Ct. 504, Abs. 56756 (1952), aff'd, 41 CCPA 8, C.A.D. 552 (1953), the plaintiff moved to punish certain officials of the Bureau of Customs for contempt in not complying with a judgment of the Customs Court granting plaintiff's petition for remission of additional duties under section 489 of the Tariff Act of 1930 (92 Treas.Dec. 226, Abs. 54422 (1957)). The customs officials, who plaintiff sought to have held in contempt, allegedly refused to refund duties to plaintiff pursuant to the court's judgment. Ostensibly, the reason for withholding a refund from the plaintiff was that the entries were made in the name of a customhouse broker (Kenneth Kittleson), and the latter filed no owner's declaration pursuant to section 485(d) of the Tariff Act. Thus, according to the Bureau, any refunds found to be due were payable to Kittleson, the importer of record, rather than to plaintiff, the ultimate consignee.

In determining whether, in withholding a refund of duties from the plaintiff, the officials had committed contempt the court noted that pursuant to sections 483 and 485(d), the importer of record (Kittleson)

was liable for payment of duties and therefore was the person entitled to recover them. Significantly, the court further held (28 Cust.Ct. at 507):

> Nevertheless, T. W. Holt & Company, as the *actual importer of the merchandise at bar,* had a right accorded by the provisions of rule 29, supra, to petition this court for the remission of the additional duties assessed by the collector. *Moreover, it is essential that such a right be extant for the protection of an importer against the possible defection of a disinterested, negligent, or bankrupt nominal consignee.* [Emphasis added.]

■ While section 489 was silent concerning who could file a petition for remission, rule 29 of the court then in effect provided that petitions must be signed and filed by the *importer, consignee, or agent.* Thus, the clear implication of the court's holding in *Holt* is that the ultimate consignee and actual owner of the goods may be deemed an importer or consignee for purposes of suing for a refund of duties.

Plainly, the rationale of *Holt*—that the right to petition was essential "for the protection of an importer against the possible defection of a disinterested, negligent, or bankrupt nominal consignee"—is applicable here to the right to file a protest.

■ Moreover, in determining that the customs officials had not committed contempt, the court emphasized that its judgment was "in no sense of the word either a money judgment or a specific direction to the United States or to the collector of customs to pay the refund determined to be due to the particular party plaintiff." Similarly, in classification cases the court does not enter a money judgment against the Government or issue a specific direction as to whom a refund that is due should be paid. Consequently, following the rationale in *Holt,* the nominal consignee's liability for duties and entitlement to the payment of any refund do not foreclose a protest by the ultimate consignee and actual owner of the goods.

In *Control Data Corporation v. United States,* 499 F.2d 1304, 61 CCPA 109, C.A.D. 1132 (1974), the appellate court upheld the jurisdiction of this court, notwithstanding that appeals for reappraisement were filed by the ultimate consignee (Control Data) rather than by the importer of record (Norman G. Jensen, Inc., a customs broker). Although the Government did not challenge the court's jurisdiction, the jurisdictional issue was raised in this court by Judge Richardson *sua sponte.* See *United States v. Control Data ´Corporation,* 69 Cust.Ct. 274, A.R.D. 310, 352 F.Supp. 1392 (1972).

See also my opinion in *Hancock Gross Mfg., Inc. v. United States,* 75 Cust.Ct. 188, C.R.D. 75–6, 400 F.Supp. 813 (1975), and the cases cited therein, wherein defendant's motion to dismiss the ultimate consignee's protest for lack of jurisdiction was denied.

While the line of authority discussed above clearly supports plaintiff's right to file a protest on its own behalf, nevertheless it appears that plaintiff heavily relies upon the Bronson affidavit, citing *Wedemann & Godknecht, supra,* and *Baylis Brothers Co., etc. v. United States,* 75 Cust.Ct. 89, C.D. 4611, 400 F.Supp. 940 (1975), as dispositive of the question of agency and ratification.

In challenging the factual and legal basis of the asserted agency relationship and ratification, defendant relies upon a number of non-customs cases enunciating principles of the law of agency. However, as may be noted from the following pertinent comments of Judge Rich of our appellate court in *Wedemann & Godknecht, we are not dealing here with technical questions of agency law, but rather with the proper naming of parties under a procedural statute* (515 F.2d at 1148, 62 CCPA at 91–92):

> * * * The only question that remains is whether there was clear error in the lower court's conclusion that appellee, in filing the protest, *acted as* the agent of the consignee. *While there is no evidence of specific appointment of Wedemann & Godknecht, Inc., to act as agent* of Allen Forwarding Co. in filing protests, it would have been a work of supererogation to have made such an ap-

pointment in view of the relationship of these customs brokers to each other and to the business of Farbenfabriken Bayer and its domestic customers. Those relationships were such as to reduce to an absurdity the strange statement in the Government's brief that "Wedemann & Godknecht, Inc. was a stranger to the entry transaction * * *." On the contrary, the facts demonstrate that Wedemann & Godknecht, Inc., was in the driver's seat throughout, selecting out-port brokers to represent it and its client, employing lawyers to file protests as necessary, and generally looking after the customs business of FFB. Allen Forwarding Co. did not have to appoint it to file protests as its agent because Wedemann & Godknecht, Inc., was making the decisions, and when it filed the protests on the Philadelphia importations it must have done so as the agent of "the person paying such charge." *Although it did so without specific request or appointment, we think the "ratification" by Allen Forwarding Co. cleared up that question, both confirming the agency relationship within the meaning of section 514 and adopting the action taken as its own.*

*We do not regard this as a technical question of agency law in the usual sense. Agency law as such is primarily concerned with contractual rights and liabilities, vicarious tort liabilities, etc.; what we are really concerned with here is customs law procedures, court pleadings, and the proper naming of parties in compliance with a procedural statute. The right at stake is the right to a judicial review, on which hangs the right to recover excess duty admittedly paid.* In *Wilmington Shipping Co. v. United States,* 52 CCPA 76, 79, C.A.D. 861 (1965), we expressed approval of the proposition stated in *Lewis' Sutherland on Statutory Construction,* Sec. 717, that statutes giving the right of appeal are to be liberally construed in furtherance of justice. In *Eaton Mfg. Co. v. United States,* 60 CCPA 23, C.A.D. 1076, 469 F.2d 1098 (1972), in which the sufficiency of a pro-

test filed pursuant to section 514 was involved, we said, 60 CCPA at 30, that "denial of jurisdiction for insufficiency of protest is a severe action which should be taken only sparingly" and construed the protest liberally. In spite of some uncertainty, we held it sufficient because it did not "impose any undue burden on the collector." In *Wells, Fargo & Co. v. United States,* 7 Ct.Cust.Appls. 346, T.D. 36903 (1916), the predecessor of this court took a liberal view of the establishment of an agency relationship in the matter of filing a protest by Wells, Fargo as a customhouse broker for an owner. The court said (p. 351–52):

This is not a case which involves the binding force and effect of a contract made by an agent, but rather is a question of practice or procedure under a statute providing how an action may be instituted.

In light of these principles and precedents and on the particular facts of this case we find no error in the decision below. The record makes it clear that the Government was aware at all times that any refunds of excess duty paid were to go to Allen Forwarding Co., and thus did not suffer additional administrative burden from the manner in which these protests were filed. [Emphasis supplied in part.]

In *Baylis Brothers Co., etc.,* a customs broker (M. A. Graser-Rothe) entered merchandise for the account of the plaintiffs, the ultimate consignees. No owner's declaration or superseding bond was filed by the broker. Plaintiffs filed the protests, and the sole issue was whether the court lacked jurisdiction under section 514. In support of their authority to file the protests as agents for the broker, plaintiffs submitted an affidavit of the broker which reads substantially the same as the Bronson affidavit in the present case.

Citing *Wedemann & Godknecht,* and relying upon the broker's affidavit averring a ratification of the protests filed by plaintiffs, Judge Ford held that the protests

were properly before the court,* stating (400 F.Supp. at 944, 75 Cust.Ct. at 94):

* * * Baylis Brothers Co., etc., in the instant case, are the actual importers who, in fact, hired and directed the entry of the merchandise through their broker, M. A. Graser-Rothe. The affidavit of the broker in the instant case ratifies the action of filing the protests as in the *Wedemann* case, *supra.*

■ Here, as in *Baylis,* the Bronson affidavit indicates that plaintiff filed the protest as an agent of Deringer, and that plaintiff's action in filing the protest was ratified by Deringer. *Cf. Pasco Terminals, Inc. v. United States,* 76 Cust.Ct. 204, C.D. 4658, 416 F.Supp. 1242 (1976) (*appeal pending*).

In summary, then, I find that under section 514 plaintiff had standing to file a protest, either on its own behalf, or if so advised, as an agent of the importer of record. On either basis, the court has jurisdiction. Accordingly, defendant's motion to dismiss is denied.

Since plaintiff relies upon its standing as an agent in filing the protest, defendant's right to depose the affiants, Bronson and Haley, as to the matters contained in their affidavits, shall be preserved, as defendant has requested.

---

* Since the appraisements were held to be void and the liquidations premature and void, the protests similarly were held prematurely filed and dismissed for appropriate administrative action.