(C.D. 4470)

GENERAL INSTRUMENT CORPORATION *v.* UNITED STATES

Court Nos. 70/58994, etc.

(Decided September 25, 1973)

*Lincoln & Stewart* (*Eugene L. Stewart* of counsel) for the plaintiff.

*Irving Jaffe*, Acting Assistant Attorney General (*James Caffentzis*, trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise of these cases which were consolidated for trial consists of various types of diodes that were exported from Taiwan in 1967 and 1968 and classified in liquidation upon entry at the port of New York under TSUS item 687.60 as transistors and other related electronic crystal components at the duty rates of 11 or 12.5 *per centum ad valorem*, depending upon date of entry. Plaintiff-importer alleges in its complaints that the regional commissioner of customs improperly disallowed duty allowances provided for in TSUS item 807.00 as to certain American products incorporated into the imported diodes.

In its brief filed after trial of the issues raised by the pleadings, defendant, through its counsel, stated, among other things:

> Defendant concedes that error was committed in court numbers 70/56814, 70/45370, 70/56808, and 70/58996, and that plaintiff is entitled to the relief requested under item 807.00, TSUS.

> In court numbers 70/58994 and 70/45369, defendant concedes, in view of the recent decision in *General Instrument Corporation v. United States*, 60 CCPA 178, C.A.D. 1106 (1973), that the gold wire in dispute is entitled to an allowance under item 807.00 TSUS.

> In court number 70/58581, the action of the Customs official in denying item 807.00, TSUS, treatment was predicated upon the fact that the components of the diode were encapsulated in a molten plastic material. That process, we submit, advanced the value of the components by a process other than assembly and by a process which was not incidental to the assembly process.

In accordance with defendant's concessions, and under the evidence and the law, the court finds that the claims of the plaintiff in court numbers 70/56814, 70/45370, 70/56808, 70/58996, 70/58994, and 70/45369, are sustained.

The sole remaining issue in the case is whether the encapsulation of

various components of the imported diodes, TG–4 or PG–4 of court number 70/58581 advanced the value of said components by a process other than assembly and by a process which was not incidental to the assembly process.

On this phase of the case the evidence shows that the exported American products which went into the making of these particular diodes consist of two nailhead leads, a silver-silicon sandwich cell, two solder wafers, and a plastic pellet. In Taiwan, these articles other than the pellet are placed in a fixture in the sequence: nailhead lead, head up, solder wafer, silver-silicon cell, solder wafer, nailhead lead, head down. The jig, thus loaded, is passed through a furnace where heat softens the solder wafers, bonding the components together. The assembled components are at this stage a functioning diode which is sometimes sold in this condition. And in Taiwan, nothing is done to these American products prior to their use in the assembly process other than to clean them.

The evidence also shows that after assembly the diodes are placed in a transfer molding machine in Taiwan where, by use of the plastic pellet, molten plastic is caused to flow around the perimeters of the assembled components, forming, upon solidification, a plastic body for the diodes. As to the purpose for the plastic encapsulation of the diodes, M. Frank Garbis, plaintiff's vice president, and sole witness in the case, testified on direct examination (R. 96) :

> Q. What is the reason for placing the plastic body around the operative portion of the diode then?—A. Mainly to prevent the cell from exposure to humidity—contaminants which potentially can short it out.
> Q. Is that a protective function?—A. It's a protective function.
> Q. And is there any other purpose for using the plastic?—A. And the mechanical handling.

Plaintiff argues that encapsulation of the assembled diode does not defeat the application of subsection (c) of item 807.00 to the imported diode. Defendant argues that encapsulation precludes item 807.00 treatment for the diode because encapsulation here is not a minor or incidental operation such as cleaning, lubricating, and painting.

The court agrees with plaintiff's contention. As plaintiff correctly points out in its brief the legislative history of item 807.00 firmly establishes that Congress intended to permit such additional operations as the application of protective coatings to be performed on assembled components, whether before, during, or after assembly, *without* resultant disqualification of the components so treated from item 807.00 treatment. See H. Rept. 342 on H.R. 7969, 89th Cong., 1st Sess. (May 12, 1965), page 49. The protective function of the plastic covering here is similar to the protective function of the epoxy which covered the operative parts of the selenium rectifier in *General Instrument Corporation* v. *United States*, 70 Cust. Ct. 64, C.D. 4408 (Febru-

ary 13, 1973) (Customs Bulletin, March 14, 1973). The Government conceded and this court, pursuant to the concession, decided that the covering of the assembled components with epoxy in that case did not defeat entitlement to 807.00 TSUS duty treatment. The word "epoxy" was not expressly stated in C.D. 4408, but an issue in the case was whether a covering of epoxy advanced the value of the American components by a process other than assembly, and the defendant's abandonment of its contention for the affirmative is embraced in the following language of its concession quoted on page 24 of the decision:

> "Additionally, the record also establishes to our satisfaction that the involved components did not lose their physical identities in the imported articles by change in form, shape, or otherwise. And finally, the record establishes to our satisfaction that said components were not advanced in value or improved in condition abroad except by being assembled."

The Court of Customs and Patent Appeals reached the same conclusion with respect to the covering of the operative components of the transistor with epoxy in *General Instrument Corporation* v. *United States*, 59 CCPA 171, C.A.D. 1062 (1972) (Customs Bulletin, August 16, 1972, at p. 11). Since the uncontroverted evidence in this case discloses that the main purpose of the plastic coating is "protective", it can hardly matter, from the standpoint of statutory interpretation, that the plastic coating also facilitates the handling of the assembled diodes in actual use. Consequently, in the court's view, encapsulation of the diodes of court number 70/58581 is an operation incidental to the assembly process, and as such, is sanctioned by subsection (c) of item 807.00. It follows, therefore, that plaintiff's claim under this action is also sustained by the evidence and the law.

Judgment will be entered accordingly.