CONTROL DATA CORPORATION,
Appellant,

v.

The UNITED STATES, Appellee.

Customs Appeal No. 5531.

United States Court of Customs
and Patent Appeals.

July 25, 1974.

William D. Outman, II, Washington, D. C., Baker & McKenzie, New York City, attorney of record, for appellant.

Irving Jaffee, Acting Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Bernard J. Babb, New York City, for the United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This appeal is from the decision and judgment of the Customs Court, Third Division, Appellate Term, 69 Cust.Ct. 274, A.R.D. 310, 352 F.Supp. 1392 (1972), wherein the Appellate Term unanimously reversed the decision and judgment of a single judge sitting in reappraisement insofar as it sustained the importer's claimed values, 64 Cust.Ct. 693, R.D. 11703 (1970).

The merchandise in issue consists of inner and outer memory planes which are constituent elements of high speed, digital computers. These memory planes are designed so that they may only be used in a particular manufacturer's computer. The memory planes were assembled in Hong Kong from U. S. origin component materials, supplied and consigned to the foreign assembler, Waltek, Ltd. (Waltek), a wholly-owned subsidiary of appellant. The memory planes were appraised on the basis of constructed value as defined by section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1401a(d).[1]

---

1. Constructed value. (d) For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States, and

The basic issue is whether the statutory amount for profit (section 402(d)(2)) element of the appraised value is correct.

The record, a detailed summary of which appears in the opinion of the trial court, consists of the testimony of six witnesses and seven exhibits, all offered on behalf of appellant. Only the testimony of James Erickson and A. J. Lavoie and a summary of Exhibits 3, 4, and 6 need be repeated for an understanding of our disposition of this appeal.

James Erickson, Legal Assistant to the Treasurer of appellant testified that he sent four letters, introduced into evidence as appellant's Collective Exhibit 3, to Ampex Corporation, Fabri-Tek, Electronic Memories and Lockheed Aircraft International requesting information as to whether each company, directly or indirectly, manufactured or assembled memory planes in Hong Kong. The letters further requested, if such manufacturing or assembling was being done, information relating to the amount or rate of profit attributable to such operations. Erickson testified with respect to the replies received from each of the above companies, which were introduced as appellant's Collective Exhibit 4. He noted that inquiries had been sent to every known company in Hong Kong that manufactured or assembled memory planes. Each of the companies acknowledged the fact that they had subsidiaries assembling memory planes in Hong Kong, but each company declined to divulge any profit information. The pertinent portions of these reply letters are as follows:

"As a matter of business policy, however, we are not able to provide you with the rate of profit attributable to the operation in Hong Kong."

. . . . . .

"I am sorry that I am not at liberty to divulge the profit structure of our Hong Kong operation (as you can well understand), but I can assure you that the profit rate is not exorbitant and is consistent with normal markups realized in this type of industry."

. . . . . .

"We regret, however, that more specific information cannot be provided

Exhibit 6 is a copy of a work sheet sent to appellant by the U. S. Customs Service which illustrates the formula on your additional questions as this material is regarded as proprietary."

. . . . . .

"Prices paid to TDL [our subsidiary] are determined by negotiation, in advance, and cover both their cost and a reasonable level of profit (by U. S. standards)."

A. J. Lavoie, an import specialist with the U. S. Customs Service at Minneapolis, Minnesota, testified with regard to procedures and methods used in effecting appraised values for the subject merchandise. He stated that in March, 1966, he sent a request for information on Customs Form 6313 to appellant and that under date of March 22, 1966, he received a reply from appellant with the information that had been requested. The reply gave a cost breakdown of Waltek's assembly charges for each memory plane assembly, which consisted of $2.63 for direct labor; $6.57 for overhead, general and administrative expenses, and selling expenses; and $5.47 for profit. Lavoie testified that the profit figure of $5.47 was converted into a percentage figure by adding the foreign factory's cost of direct labor and general expenses and dividing this total into the foreign factory's dollar figure for profit. Lavoie confirmed that the profit percentage, derived solely from the relation which profit bears to direct labor and overhead, was applied to those two

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

cost items and against the cost of U. S. goods, ex-U. S. plant and against freight, brokerage and insurance to the foreign factory.

used to determine the appraised value of the imported merchandise on the basis of constructed value. The pertinent portion of Exhibit 6 reads as follows:

## DETERMINE PERCENT OF PROFIT
## PRIOR TO "WORKING" CONSTRUCTED VALUE

| | | |
|---|---|---|
| Direct labor | (1) | $2.63 |
| Overhead, Genl and Admin. expenses, and selling expenses | (2) | 6.57 |
| Profit | (3) | 5.47 |
| Total remittance | | $14.66 |

% of profit is determined by dividing the total costs (1) and (2) into the profit figure (3).

| | |
|---|---|
| 1 and 2 total | $9.20 |
| 3 | 5.47    59.46% profit. |

Having found percent of profit then work constructed value net cost

| | | |
|---|---|---|
| of U. S. Goods sent abroad | $33.56 | |
| Add frt, brokerage, ins. to fgn factory | .48 | |
| totals | | 34.04 |
| direct labor | 2.63 | |
| genl exp | 6.57 | 9.20 |
| profit 59.46% applied on total of 34.04 and 9.20 which is 43.24 | | 25.71 |
| | | $68.95 |

Appellant contends that $5.47 is the correct amount for profit to be used in computing the constructed value; whereas appellee claims that $25.71 is the correct amount for profit.

The trial court found the above profit computation—$25.71—to be improper and stated:

It is obvious that the assembler had no expenses for the material components and merely bore the expenses of assembly. The percentage which his profits bear to his expenses will be much larger than if he were the actual manufacturer and had to purchase the materials. For this reason it is totally unrealistic, in recreating or simulating the cost of production, to generate a percentage in this manner. This results in the anomaly of

an amount for profit greater than the total actual cost of assembly and profit.

Defendant, in its brief asserts that "the appraising official found an amount of profit which would have been realized had there been a cost of materials incurred by the exporter." This commendable sentiment is precisely what was *not* done here.

The appraising official began without considering the cost of materials at all. He first determined a percentage of profit by dividing the total costs (direct labor, overhead, general and administrative expenses) into the profit. He then, for the first time, brought cost of materials into the consideration by applying said profit percentage to the total sum of cost of

component materials, freight, direct labor and general expenses. Thus his procedure in determining the profit percentage was inconsistent with his later application of that percentage. Had the appraising official been treating the assembler as a manufacturer, as would have been the proper procedure, he would never have computed a profit percentage by ignoring cost of materials entirely. This is a fundamental error in the ascertainment of an amount for profit since the *percentage* was generated *without* regard for cost of materials and then an amount arrived at with full regard for cost of materials.

Since the memory planes were assembled from components which were the product of the United States, they were subject to item 807.00 TSUS[2] treatment wherein duty is assessed upon the full value of the imported article less the cost of the American components. For that reason, the trial court further stated:

> One of ironies of this method of computation is that it places the present importer in a worse position when he is supplying the components than if he were to purchase the entire completed article from the assembler. In effect what was done here is actually very close to the levying of duty

on the cost of materials, directly contrary to the provisions of item 807.00. The procedure used [h]as the effect of expanding the value of the article by amounts directly related to the cost of materials making the later elimination of the cost of American materials a meaningless act.

The trial court then found that since only the method of computation used was incorrect, appellant could rely upon the underlying values for labor, overhead expenses, and profit which remained presumptively correct under the separability doctrine. The trial court noted that were it not for that presumption of correctness, appellant would not have met its burden of proof in showing that its amount for profit was one which is usually reflected in sales by producers of merchandise of the same general character. The court, citing N. M. Albert Co., Inc. United States, 59 Cust.Ct. 788, R.D. 11417 (1967), held that appellant had not shown the required diligence in ascertaining the profits of competing manufacturers, insofar as appellant's inquiries were directed to the parent companies, rather than their Hong Kong subsidiaries.

In unanimously reversing the trial court's judgment, insofar as it sustained appellant's claimed values, each judge of the Appellate Term wrote a separate

---

2. Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting . . . . . . . . . . . . . . . . . . . . . . . . . . A duty upon the full value of the imported article, less the cost or value of such products of the United States * * *

opinion accompanying the court's Per Curiam opinion.

Judge Richardson opined that the court lacked jurisdiction as to some of the consolidated appeals. On the entry papers of some of the importations, the consignee is Norman G. Jensen, Inc., not appellant. Since appellant is not the consignee of the instant merchandise, and there is no evidence in the record that appellant is the agent for the consignee, Judge Richardson would have dismissed those appeals on the ground that appellant lacked standing to prosecute those appeals.

As to the other appeals, Judge Richardson agreed with the trial court that the appraiser's method of computing a statutory profit did not comply with the requirements of section 402(d). However, he disagreed with the trial judge that appellant could reply upon the separability doctrine for the element of profit, since that element was the very element in dispute between the parties. Since he found the record barren of any evidence of the profit derived from sales of merchandise of the same general character which would support the profit figure contended for by appellant, Judge Richardson opined that the appraisement must stand as being presumptively correct.

Judge Landis was satisfied that the court had jurisdiction of all the appeals particularly in view of the absence of any challenge by appellee to appellant's standing. Judge Landis further concurred in the result reached by Judge Richardson as to the remaining importations and held that result equally applicable to the appeals which Judge Richardson would have dismissed for lack of jurisdiction.

As to the jurisdictional issue, Judge Newman noted that appellant's attorney had signed the notices of appeal and under that signature line appeared the notation "(Consignee or Agent)" and, under the provisions of section 501(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1953 (19 U.S.C. § 1501), appeals are authorized to be filed in the name of an agent of the consignee. Since the government had not challenged in any manner appellant's standing, Judge Newman thus held there was no burden upon appellant to prove its status as an agent and, therefore, he would not dismiss any of the appeals on jurisdictional grounds.

Judge Newman further stated with respect to the merits of the appeal that:

> In my view, there is a presumption of correctness attaching both to Waltek's profit figure utilized in the Government's computation ($5.47), and the profit figure the district director derived from the latter figure by a computation ($25.71) which he included in the constructed value. Waltek's profit has the status of a "subsidiary finding" by the district director *solely as to the amount of Waltek's profit*, and thus is presumptively correct *only to that extent*. On the other hand, the amount of profit which the district director included in the constructed value ($25.71) has the status of a presumptively correct "subsidiary finding" that such amount was "equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement", as required by * * * [Section 401(d)(2)(402(d)(2))].

> Since there is no presumption that Waltek's profit was "equal to that usually reflected in sales of merchandise of the same general class or kind" (because it was not the profit included in the appraised value), appellee had the burden of establishing by proof the profit usually reflected in sales.

Having found that the above burden had not been met by appellant, Judge Newman joined in the reversal of that portion of the lower court's decision which sustained appellant's claimed profit amount.

In holding that appellant had not met its burden of proof, Judge Newman expressed the view that even granting that appellant had shown the required diligence in ascertaining the profits of competing companies, the "diligent effort" rule was not applicable in this case because section 402(d)(2) refers to sales of merchandise, rather than sales of *services* such as those performed by Waltek.

## OPINION

■■ Bearing in mind that statutes, such as section 501(a), which give a right of appeal are to be liberally construed, Wilmington Shipping Co. v. United States, 52 CCPA 76, C.A.D. 861 (1965), we agree with the rationales of the majority of the Appellate Term, *supra*, as to the jurisdictional issue raised *sua sponte* by Judge Richardson. Accordingly, we hold that this court has, as did the Appellate Term, jurisdiction of all the instant appeals.

■ Upon examining the profit computation method at bar, we have reached the same conclusion as that of the trial court and Judge Richardson—the method used by the appraising official to compute the constructed value was erroneous. The evidence, particularly Exhibit 6, clearly shows that the appraising official adopted an artificial and unrealistic standard for computing Waltek's profit, rather than using the standard prescribed in section 402(d)(2). The $25.71 profit amount computed is particularly demonstrated to be illogical and unrealistic when it is compared to Waltek's total costs of $9.20 for labor and overhead—a profit of approximately 279.5% of its total costs. Accordingly, we hold that the appraising official, in computing a profit percentage without considering the cost of materials, erred in then applying that profit percentage to the cost of the materials—a cost which was never incurred by Waltek.

However, appellant, in order to overcome the presumption of correctness at-taching to the appraisement, must still establish that his profit amount of $5.47 is "an amount for . . . profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement . . . ." Section 402(d) (2). Appellant urges that this burden of proof has been met for two alternative reasons.

■ Appellant first submits that the doctrine of separability is applicable to the instant appraisement. Therefore, appellant contends that it is entitled to rely upon the presumptive correctness of the appraising official's subsidiary finding that Waltek's actual profit is $5.47 and that this amount should serve as the profit element of the constructed value. We, as did Judge Newman, agree with appellant that the doctrine of separability is applicable, but only to the extent that appellant's $5.47 amount may be considered presumptively correct as Waltek's actual profit. But whether or not its $5.47 actual profit amount satisfies the requirements of section 402(d)(2) is the very heart of this controversy, insofar as the profit amount is the sole item in the appraisement that appellant has challenged. To that extent, the doctrine of separability does not create a presumption of correctness that Waltek's actual profit complies with the requirements of section 402(d)(2). See United States v. Fritzsche Bros., Inc., 35 CCPA 60, C.A.D. 371 (1947).

Assuming, *arguendo*, that it could not rely upon the doctrine of separability to meet its burden of proof, appellant asserts that the record demonstrates that it has expended diligent, although unsuccessful, effort to ascertain the profits of the other Hong Kong manufacturers of merchandise of the same general kind. Therefore, appellant contends that the profit actually realized by Waltek should suffice as the profit element of section 402(d)(2).

This court has on occasion permitted the profits actually earned by a manu-

facturer to be used as the profits required by section 402, when either there are no other manufacturers of merchandise of the same general class or kind or when diligent inquiry has failed to elicit the required information from other manufacturers, if they are in existence. United States v. Jovita Perez, 36 CCPA 114, C.A.D. 407 (1949). See also John V. Carr & Son, Inc. v. United States, 52 CCPA 62, C.A.D. 860 (1965) and United States v. Maier, 21 CCPA 41, T.D. 46378 (1933).

 The uncontradicted evidence of record establishes that there were four other Hong Kong manufacturers of merchandise of the same general class or kind, from whom appellant diligently attempted to ascertain the amount or rate of profit attributable to such manufacturing operations. We are not unmindful of the fact that appellant attempted to elicit this information from the American parent companies, rather than from their Hong Kong subsidiaries, but we do not find this fact to affect our analysis of whether or not appellant diligently sought the needed profit information.[3] Nor do we find any support in the case law that the "diligent effort" rule is not applicable when sales of services, rather than merchandise, are involved. The determinative factors are that the companies to whom inquiries were made represented all known Hong Kong manufacturers, and the necessary information, which they declined to provide, was within their possession, as is clearly demonstrated by their replies, supra. Had their replies not indicated that they possessed such information, appellant would have then had to extend the scope of its inquiry to include directly eliciting information from the Hong Kong subsidiaries. Thus, we hold that appellant has satisfied the requirements of the "diligent effort" rule. In so

doing, appellant has established that its profit amount of $5.47 satisfies the requirements of section 402(d)(2) and has overcome the presumption of correctness attaching to the appraisement.

For the foregoing reasons, appraisement of the imported memory planes at the constructed values found by the Customs Court, Third Division, Appellate Term is incorrect, and its judgment is reversed.

Reversed.

MILLER, J., concurs in the result.

3. We do not find that N. M. Albert Co., Inc. v. United States, 59 Cust.Ct. 788, R.D. 11417 (1967), relied upon by the trial court, precludes inquiries to a parent corporation from satisfying the "diligent effort" rule. Indeed, the only reference to subsidiaries in that case was to the effect that the foreign manufacturer was a subsidiary of an American company. The manufacturer was found not to have demonstrated due diligence insofar as there was an insufficiency of proof regarding the scope of its inquiry.