**TEXAS INSTRUMENTS INCORPORATED,**
**Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4867; Court No. 76–2–00443.**

United States Customs Court.

Aug. 5, 1980.

tion thereto by the defendant, is the propriety of the appraising officer's actions in (1) disallowing item 807.00 treatment for a plastic epoxy molding compound used in the assembly of some of the imported devices, (2) making certain additions to or refusing to make certain reductions against the cost of components fabricated or purchased in the States for use abroad in the assembly of the imported devices, (3) making certain additions to labor costs, general expenses, and profit, and (4) making improper value calculations in the application of the duty-free allowance.

It is conceded in the pleadings that the imported devices were produced in Curacao, Netherlands Antilles, by Geophysical Service Incorporated, hereinafter referred to as GSI, a wholly owned subsidiary of plaintiff who imported the devices, that during 1968 and 1969 GSI was the only producer and exporter in Curacao of merchandise of the same general class or kind as the imported devices, and that the merchandise in issue was appraised on the basis of constructed value. It is conceded by the parties that constructed value is the proper basis for determination of the value of the imported devices.

Central to a determination of the pending motions is a consideration of the circumstances which prompted the appraising officer, in the first instance, to make parallel and hence sometimes conflicting calculations of the component elements of constructed value (exhibits B and E) as against the final calculations made by plaintiff (exhibits A and D), bearing in mind the requirements of 19 U.S.C.A. § 1401a(g) (section 402(g), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956).

The record shows that the appraising officer was possessed of no independent sources of cost information, and was entirely dependent upon plaintiff for the data with which he appraised the imported merchandise. The record also shows that plaintiff's cost submissions were initially overstated in the estimation of duties tendered with its entries out of an abundance of caution to guard against underestimation of

Eugene L. Stewart, Washington, D. C., for plaintiff.

Alice Daniel, Asst. Atty. Gen., David M. Cohen, New York City, Director, Commercial Litigation Branch (Sheila N. Ziff, New York City, on briefs), for defendant.

RICHARDSON, Judge.

In this action involving the importations of integrated circuits, silect transistors, and metal can transistors assembled in Curacao, Netherlands Antilles, by Geophysical Service Incorporated, and exported to the United States in 1968 and 1969, plaintiff has moved, and defendant has cross-moved, for summary judgment. In issue under the pleadings as augmented by the first amended complaint, which amendment the court hereby allows in view of the lack of opposi-

the Government's revenues. Hence, it is a foregone conclusion that plaintiff would have had to revise its cost figures periodically because of its use of standard costs (i. e., costs for a past period) in the entry of the merchandise which varied from actual costs. This was apparently permissible in plaintiff's case under applicable customs regulations. See 19 C.F.R. § 8.15(d)(1) (1968 ed.).

The appraising officer elected to disregard the transactions between plaintiff and its subsidiary, GSI, solely for the reason, it appears, that the importing and exporting parties are related (exhibit B, note A). Nevertheless, the appraising officer was also of the opinion that the general expenses and profit of the exporter are "the usual in the trade" because GSI is "the only producer of this type of merchandise in the Netherlands Antilles" (exhibit E, note M).

However, because of this relationship, the appraising officer deemed it necessary to determine for himself the usual general expenses and profit percentage that was to be applied to the individual device cost of labor and fabrication in the transactions between plaintiff and GSI.

In determining the usual general expenses and profit percentage for each year (1968 and 1969), the appraising officer determined the total cost of materials, fabrication, general expenses and profit for each year, and then divided the total of materials and fabrication into the total of general expenses and profit.

In addressing himself to data presented by plaintiff relative to GSI's booked costs, where an item of cost was deemed adequate the appraising officer accepted that amount. Where an item of cost was deemed to be deficient, he, in most instances, accepted the upward adjustment suggested by plaintiff. He objected to plaintiff's suggestion for a reduction to a lesser amount of some costs incurred by GSI. He also objected to plaintiff's suggestion for elimination of certain interdivisional and intra–group profits.

As to materials manufactured by plaintiff and sold to GSI at a loss, not only were these materials uplifted to actual cost by the appraising officer, they were also uplifted by an additional 8.11% to reflect the price plaintiff would have charged had GSI been an independent customer. The 8.11% figure represented a "consolidated corporate profit" experienced by plaintiff in 1968, based upon the total of all costs, which was utilized when it was determined that GSI made no profit in 1968. The appraising officer opined, "There was no overall profit made in Curacao for 1968. Because that is not normal and apparently resulted from the fact that the plant was new or was the result of some artificial cause, we agreed with the importer that we would use the corporate profit for TI [Texas Instruments Incorporated] for 1968 which was 8.11%" (exhibit E, note L).

■ In determining whether or not to disregard a transaction between related parties, an appraising official must be guided by something more than mere suspicion generated by the relationship between the parties *per se.* See *Greb Industries, Ltd. v. United States,* 64 Cust.Ct. 608, 617, R.D. 11691, 308 F.Supp. 88 (1970). He must possess factual information indicative that the amount purporting to represent a particular element of value "does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement." See 19 U.S.C.A. § 1401a(g)(1); *Brown, Alcantar & Brown, Inc., et al. v. United States,* 69 Cust.Ct. 249, 254, A.R.D. 306, 348 F.Supp. 723 (1972). In the instant case the appraising officer possessed no such contravening facts inasmuch as he knew that GSI was the only producer of merchandise of the same general class or kind in Curacao, the market under consideration. Thus, it is clear here that the appraising officer who, in this aspect of the administrative proceeding, (at least, has the burden of persuasion), discredited the transactions between the parties while lacking the proper basis to make that judgment at the outset.

Given the facts at bar, the focal point of concern on the part of the appraising offi-

cer, as perhaps with all new export industries facing customs scrutiny, should have been the *bona fides* of the transactions themselves. *Cf. Ziade v. United States*, 14 Ct.Cust.Appls. 47, 50, T.D. 41551 (1926). On the instant motions plaintiff has made an extensive and minutely detailed showing of the cost structure underlying the imported devices. Indeed, it did as much at the administrative level over the period of time that the subject entries were before the customs officials. Of course, in reviewing the evidence the court's role is not to resolve any genuine factual issues in the case, provided that they are not *material* issues. *United States v. Sumitomo Shoji, New York, Inc.*, 63 CCPA 79, 83, C.A.D. 1169, 534 F.2d 320 (1976).

As to plaintiff's contention that an item 807.00 allowance should be made for the epoxy compound used to encase the assembled silect transistors, it is noted that plaintiff places reliance upon *General Instrument Corporation v. United States*, 71 Cust.Ct. 51, C.D. 4470 (1973) for the proposition that epoxy pellets used for encapsulation purposes were within the ambit of item 807.00 (brief, p. 129). As the court reads C.D. 4470, which was decided by the writer of this opinion, the court did not so hold. In that case, which involved a claim for item 807.00 treatment for various types of *diodes* assembled in and exported to the States from Taiwan, the issue was whether or not encapsulation of the *diodes* by means of the plastic defeated the claim for allowance of item 807.00 treatment as to the *diodes*, and the court held that encapsulation did not defeat the importer's claim.

In C.D. 4470 the court was careful to distinguish between *American products* and *assembled components*—grouping the pellets as being one of four American products while elsewhere identifying the other products, i. e., nailhead leads, solder wafers, silver–silicon sandwich cell, as the assembled components. And it was the *diodes* so assembled for which the allowance in duty was ordered by the court there, not the epoxy material. Consequently, plaintiff's reliance upon C.D. 4470 is misplaced.

Under the uncontroverted facts of this case, it is clear that the pellets do not qualify for item 807.00 treatment. In the form in which they were exported the pellets were not ready for assembly. According to the record the plastic material is of the thermosetting type which must be subjected to heat in Curacao in order to flow and assume a new permanent shape upon solidification. And during this process the material undergoes a change in chemical composition. Obviously, therefore, the pellets cannot be deemed to be "fabricated components" within the meaning of item 807.00 at the time of their exportation from the United States. It follows, therefore, that defendant's cross–motion for summary judgment must be granted as to plaintiff's claim for item 807.00 treatment for the epoxy compound.

Moving to the appraisement aspect of the case, the court is not impressed that any genuine factual issue exists as to the nature of the transactions involving the movement of the merchandise in issue between plaintiff and GSI. There is no question but that the products comprising the imported devices were *sold* and not *consigned* to GSI, notwithstanding the nomenclature employed by counsel in discussing the movement of the merchandise abroad and back again.

Also, the court finds no issue in the case relative to the element of profit in connection with the assembly and exportation of the merchandise at bar in 1968. The record shows that there was no profit earned by GSI in 1968. Consequently, in the absence of any evidence of inaccurate reporting the court is in agreement with plaintiff that no profit as an element *per se* should be included in a constructed value appraisement affecting the 1968 devices. As the court reads 19 U.S.C.A. § 1401a(d)(2) (section 402(d)(2), Tariff Act of 1930, *as amended by* the Customs Simplification Act of 1956), an addition for *profit* is not mandated where none was in fact experienced at the level which serves as criteria for ascertainment of this element of constructed value–in this case, GSI, by reason of its status as the sole

producer in the market under consideration. See *United States v. Henry Maier*, 21 CCPA 41, 50, T.D. 46378 (1933). Any other view of the matter would result in the creation of an element of value as arbitrary as that existing under the old law formula of cost of production which Congress endeavored to move away from in the enactment of the new law formula of constructed value in its pursuit of commercial reality. See S.Rep.No. 2560 on H.R. 6040, 84th Cong., 2d Sess. p. 3, U.S.Code Cong. & Admin.News, p. 4179 (1956). Therefore, in the court's view the appraising officer erroneously calculated an element of profit in his return for the 1968 devices.

This is not to say, however, that *profit* does not enter into the ascertainment of constructed value for the 1968 devices. On the contrary, it does, if only in connection with the ascertainment of *other* elements of constructed value for these particular devices, namely *materials* and *fabrication* costs. This is simply because the criteria for ascertainment of costs of materials and fabrication, as particular elements of value, are not restricted as to location. Consequently, the resourcefulness of the appraising officer in reaching all aspects of cost, inclusive of intercorporate and intra–company profit, with respect to the elements of *materials* and *fabrication* as to the imported devices including the 1968 importations finds support in the statute, i. e., 19 U.S.C.A. § 1401a(d)(1) (section 402(d)(1), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), and judicial precedents to which attention is called by defendant, and, therefore, must be upheld irrespective of whether such costs originate onshore in the United States or offshore in the country of exportation.

The same cannot be said with respect to the elements of *general expenses and profit*. In fact, it is in connection with the ascertainment of general expenses and profit that appraisement of merchandise under the residual new law formula witnesses its most radical departure from the old law standard, in the court's opinion. Under the new law no longer is the ascertainment of general expenses *limitless* as

to place (i. e., the usual general expenses) as was the case under the old formula. Now, under the new law Congress, by linking the ascertainment of the element of general expenses with the ascertainment of the element of profit which, under the old law was limited as to *place*, has revealed an intention to limit the ascertainment of these two elements of a constructed value determination to *offshore* cost considerations. Such limitation is expressed in the statutory language, "in sales . . . in the country of exportation . . . for shipment to the United States," appearing in section 1401a(d)(2) which, of course, qualifies as to *place* the calculation of the elements of general expenses and profit. *Cf. Kaysons International, Ltd. v. United States*, 66 Cust.Ct. 560, 566, R.D. 11741 (1971).

The *place limitation*, of course, impacts the appraisement of the imported devices insofar as concerns the elements of general expenses and profit in view of the appraising officer's inability to employ the broader methodology such as he would be able to do if he could properly disregard the transactions at bar. A constructed value appraisement under the new statutory formula provides its own criteria for self–fulfillment. It does not permit the appraiser to go outside the guidelines in the statute.

A principal offender here is the item of corporate support expenses calculated under the heading of General and Administrative Expenses. The appraising officer took the position that "It is traditional and statutorily correct to include all items of expense whether they were necessary or not. They *were* incurred and they are an actual expense" (exhibit B, note G). Thus, the appraising officer makes no pretense about the fact that the item of corporate support is neither *offshore* oriented nor involved *in* the production of the imported devices.

The case of *United States v. Cavalier Shipping Co., Inc., et al.*, 56 CCPA 117, C.A.D. 965, 412 F.2d 245 (1969), to which defendant calls attention, supports the rejection of this item from the general expenses category because the item involved

there (royalty) was incurred *in the manufacture* of the debarking machines offshore, and, as such, was found to be an item properly included in the cost of production and constructed value appraisements.

Likewise affected is the appraising officer's rejection of certain adjustments proposed by plaintiff under the headings of Factory Overhead, General Expenses Portion of Startup Costs, and Other General and Administrative Expenses. Adjustment of these items as proposed was rejected because the proposed adjustments reflected only *offshore* cost considerations and not both *onshore* and *offshore* costs which were implicit in the "markups" and "assists" returned in the appraisements. In one instance, however, it is noted that the appraising officer did accept the adjustment figures proposed by plaintiff in connection with the 1969 costs for transferred administrative supplies, i. e., variance ($13,603), handling ($762), and freight ($1,855). And the appraising officer's reason for differentiating between the proposed adjustments here is lost on the court unless such action be associated with his calculation of the rate of profit (as an element of value) applicable to the 1969 devices. This rate too, like the proposed adjustments, is predicated upon *offshore* cost considerations.

The *rationale* underlying the ascertainment of the rate of profit applicable to the 1969 devices is that "[s]ince GSI was the only manufacturer/assembler of semiconductor devices in Curacao in 1969, its experienced profit, not T.I.'s, was the *usual* profit. In sum, the appraising officer was correct in utilizing GSI's own profit rate in appraising the merchandise" (defendant's brief, pages 18–19). The court agrees with this *rationale.* And the only fault which can be found with the appraisements here is that the *same rationale* should have been applied in connection with ascertainment of the element of general expenses inasmuch as both elements are paired under the same qualifying phrases in the statute.

With respect to value calculations applicable to both the 1968 and 1969 devices, the court is of the opinion that other than the "place limitation" affecting ascertainment of the elements of general expenses and profit in a constructed value determination as noted, there is no warrant in the statute for applying the profit rate so calculated against only Curacao based materials, labor, and "assists" as contended for under plaintiff's alternate claim. Unlike the situation in *Control Data Corporation v. United States,* 61 CCPA 109, C.A.D. 1132, 499 F.2d 1304 (1974), which is relied upon by plaintiff, the materials, etc., at bar were not *consigned* to GSI, the assembler. They were *sold* to the assembler. And there is no showing in the record that any item was furnished without cost to or a charge against the assembler.

For the reasons stated plaintiff's motion for summary judgment is granted as to its claim against calculation of an element of profit applicable to the 1968 importations, and as to its claim against inclusion of *onshore* cost considerations in the calculation of the element of general expenses applicable to the importations. And, in the interest of minimizing mathematical error, the parties are hereby directed to submit to the court proposed findings of fact and conclusions of law resulting from the conclusions reached herein insofar as they affect the appraised unit values for each device type imported as shown in paragraph 247 of plaintiff's Statement of Material Facts.

The foregoing constitutes the decision and orders of the court.