**STANDARD COMPONENTS DIVISION, STANCOMP, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 86–02–00235.**

United States Court of International Trade.

May 26, 1988.

does not appear to be incomplete.

Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart and James R. Cannon, Jr.), Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice (Saul Davis), New York City, for defendant.

DiCARLO, Judge:

Plaintiff challenges profit calculations for converter assemblies imported from Mexico as appraised by the United States Customs Service (Customs) on the basis of cost of production, section 402(f) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1402(f) (repealed effective July 1, 1980). Plaintiff and defendant each move for summary judgment pursuant to Rule 56 of the Rules of this Court.

The Court has jurisdiction for this action under 28 U.S.C. § 1581(a) (1982). Defendant's cross motion for summary judgment is granted and plaintiff's motion is denied. The action is dismissed.

### Discussion

The converter assemblies were assembled in Mexico from components manufactured in the United States and shipped under consignment to plaintiff's Mexican subsidiary. When entered into the United States from Mexico, Customs appraised the converter assemblies on the basis of cost of production pursuant to 19 U.S.C. § 1402(f), which provided:

**(f) Cost of production**

For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) the cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Customs determined the amounts for paragraphs (1) and (2) of 19 U.S.C. § 1402(f) from plaintiff's quarterly import declarations or cost sheets, including in the amount for paragraph (1) the costs of United States fabricated components plaintiff supplied to its Mexican subsidiary. Cus-

toms calculated the amount for profit under paragraph (4) by multiplying the amounts found under paragraphs (1) and (2) by 8%, because plaintiff's data showed no profit or a profit of less than 8% of the sum of the amounts found for paragraphs (1) and (2).

After appraisement, Customs classified the converter assemblies under item 807.00 of the Tariff Schedules of the United States (TSUS), assessing duty under item 685.20, TSUS, as "television apparatus and parts thereof", on the full value of the converter assemblies less the value of the components manufactured in the United States. Item 807.00, TSUS, provides for a duty on the full value of certain imported articles, less the cost or value of products of the United States:

> Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting.

Plaintiff does not contest the classification of the converter assemblies nor the amounts for cost of production found under paragraphs (1) and (2) of 19 U.S.C. § 1402(f). The issue plaintiff presents is whether Customs correctly applied the statutory language of paragraph (4) of 19 U.S.C. § 1402(f) in calculating the 8% minimum profit, by multiplying the amounts found under paragraphs (1) and (2) by 8%, when the amount under paragraph (1) included the value of United States fabricated components.

Plaintiff contends that the 8% minimum profit should be calculated by subtracting the value of United States fabricated components from the amount in paragraph (1), adding the amount in paragraph (2), and multiplying the sum by 8%. Plaintiff argues that in passing item 807.00, TSUS,

Congress intended to provide qualified components manufactured in the United States duty-free treatment upon re-entry.

The Court disagrees with plaintiff's position regarding profit calculation for cost of production appraisement. The plain language of paragraph (4) of 19 U.S.C. § 1402(f) provides a fixed formula for profit calculation which expressly directs that the addition for profit not be "less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2)." Plaintiff does not challenge the amounts found under paragraphs (1) and (2), even though paragraph (1) includes the value of components manufactured by plaintiff in the United States and shipped under consignment to its Mexican subsidiary for assembly. This statutory language is not ambiguous, but rather clearly sets forth a formula for profit computation.

Plaintiff in effect is asking the Court to amend the language of 19 U.S.C. § 1402(f)(4) as written by Congress in 1930 in order to somehow accommodate item 807.00, TSUS, created in 1962 with passage of the Tariff Classification Act of 1962, Pub.L. No. 87–456, 76 Stat. 72. *See* 10 *Tariff Classification Study* 12–16 (1960). This the Court declines to do. If Congress wished to change the method of calculating profit expressly provided for in 19 U.S.C. § 1402(f)(4) to account for item 807.00, TSUS, it could have done so, the Court will not now order such a change.

Customs does not ignore the intent of item 807.00, TSUS. After appraisement and before computing the final amount of duty owing, Customs deducted the full value or cost of those components manufactured in the United States pursuant to item 807.00, TSUS, and Headnote 3, Schedule 8, Part 1, Subpart B, TSUS. In finding that an article should be appraised as a whole entity even if it contains parts entitled to duty-free entry as American goods returned under paragraph 615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (provision prompting creation of item 807.00, TSUS), the Court of Customs and Patent Appeals, predecessor to our appellate court, noted

that "when ... the collector constructively separated from the rest ... those parts which could be identified as goods of American origin and admitted them duty free, appellant received all the exemption he was entitled to...." *John V. Carr & Son, Inc. v. United States,* 55 CCPA 111, 113, C.A.D. 942, 396 F.2d 1017 (1968) (quoting *Parrot v. United States,* 40 CCPA 8, 12, C.A.D. 490 (1952)).

Despite the clear expression of Congress' intent regarding the 8% minimum profit calculation, plaintiff asserts that the general intent of Congress in 19 U.S.C. § 1402(f)(4) was to have profit be equal to that profit ordinarily added by the trade under consideration in the country of exportation where the goods are produced, claiming that in Mexico other assemblers do not include the cost of United States components consigned for assembly in the computation of their profits. Plaintiff argues that calculation of profit based on the profit ordinarily added in the exporting country is also consistent with Customs' practice regarding similar profit calculations on the basis of constructed value pursuant to section 402(d)(2) of the Tariff Act of 1930, as added by the Customs Simplification Act of 1956, 19 U.S.C. § 1401a(d)(2) (revised and amended in 1979 and 1980), citing in support *Texas Instruments, Inc. v. United States,* 85 Cust.Ct. 43, C.D. 4867, 500 F.Supp. 922 (1980).

Whatever the general intent of paragraph (4) of 19 U.S.C. § 1402(f), it expressly provides a fixed formula for calculation of a minimum profit to be added to cost of production appraisements. This minimum profit formula is triggered where, as in this case, the profits ordinarily added in the exporting country of origin for merchandise of the same class or kind is less than 8% of the amount found for paragraphs (1) and (2) of 19 U.S.C. § 1402(f).

*Texas Instruments* dealt with constructed value appraisement under 19 U.S.C. § 1401a(d)(2). The Court finds Customs practice regarding constructed value profit computation of little relevance to cost of production profit computation, since the constructed value provision does not contain a fixed formula for minimum profit.

Although *Texas Instruments* noted in dicta that profit under cost of production was limited to "place", the country of exportation (the Netherlands Antilles in *Texas Instruments* and Mexico in this case), there was no discussion of the 8% minimum fixed formula. *Texas Instruments* indicated, however, that the amounts associated with paragraphs (1) and (2) of cost of production appraisement were not limited as to place. The Court does not find it inconsistent or unreasonable for Congress to limit profits in general to the country of exportation and then provide a minimum profit formula which encompasses costs incurred outside that country, such as here where the components included in the amount determined under paragraph (1) of 19 U.S.C. § 1402(f) were manufactured in another country but are included in profit because of the express wording of the 8% minimum fixed formula.

Finally, plaintiff argues that Customs' approach leads to absurd results, because in situations hypothesized by plaintiff an "unreasonably large profit component" could be assessed in the cost of production appraisement, citing *Control Data Corp. v. United States,* 61 CCPA 109, C.A.D. 1132, 499 F.2d 1304 (1974). Plaintiff's Brief in Support of Summary Judgment, 20–23.

In *Control Data,* the Court of Customs and Patent Appeals upheld a finding that a constructed value appraisement was erroneous, because it was determined to be an artificial and unrealistic standard inconsistent with the standard prescribed in 19 U.S. C. § 1401a(d)(2). The present case, unlike *Control Data,* involves cost of production profit computations under 19 U.S.C. § 1402(f)(4), and Customs followed the fixed formula prescribed in that provision when calculating plaintiff's profit. Although under certain extreme examples the profit calculated may appear unrealistic, Congress expressly provided the fixed formula for minimum profit. In any event, the difference between the amount for

profit using the statutorily prescribed formula and the amount using plaintiff's suggested calculations is neither outrageous nor absurd in this case.

The Court grants defendant's cross-motion for summary judgment and denies plaintiff's motion. The action is dismissed. Judgment will be entered accordingly.